[No. 30854. Department One. June 30, 1949.]

MARION FLINT DILLON, *Respondent*, v. ROLL NEWELL DILLON, *Appellant*.[1]

[1]Reported in 207 P. (2d) 752.

*Edwards E. Merges* and *James C. Harper*, for appellant.
*Hulbert, Helsell & Paul*, for respondent.

STEINERT, J.—This is an appeal from an order directing payment by defendant of alimony and support money in accordance with the trial court's interpretation of the provisions of an interlocutory decree of divorce previously obtained by the plaintiff, and, further, denying defendant's petition for modification of the terms of the interlocutory decree.

The pertinent facts in the case are as follows: Respondent, Marion Flint Dillon, and appellant, Roll Newell Dillon, a practicing physician, intermarried on November 8, 1928.

They have two children, by adoption, both of whom are girls.

In March, 1938, respondent instituted an action against appellant for separate maintenance. Appellant cross-complained, seeking a divorce from respondent. During the course of the trial which followed, the parties came to an agreement, in consequence of which respondent amended her complaint and asked for a divorce from appellant.

By the agreement, also, the parties stipulated, as between themselves, a complete settlement of all matters relating to alimony and support money, insurance protection, division of community property, care, custody, control, higher education, and medical and dental care of the children, and attorneys' fees. An interlocutory decree embodying the terms of the settlement was entered November 3, 1938.

By the terms of that decree, respondent was granted a divorce, was awarded the custody of the two children, then of the age of eight years and six years respectively, and was given the household furniture. Appellant was awarded all the rest of the community property, including the home, a tract of unimproved land, certain corporate stock, an automobile, and all office furnishings, equipment, and other effects incidental to defendant's medical practice.

The present controversy is based upon, and grows out of, that portion of the interlocutory decree which reads as follows:

"It Is Further Ordered, Adjudged and Decreed that the defendant [appellant], Roll Newell Dillon, pay to the plaintiff [respondent], Marion Flint Dillon, as alimony and support money for herself and said children, one-third of the first Twelve Thousand ($12,000.00) Dollars *of his annual net professional income, as the same is computed for Federal income tax purposes*, and one-fourth of all such annual net professional income in excess of Twelve Thousand ($12,000.00) Dollars; provided, however, that in any and all events, said defendant shall pay to said plaintiff as alimony and support money for herself and said children a minimum of Two Hundred Twenty-five ($225.00) Dollars per month, payable in equal semi-monthly installments of One Hundred Twelve and 50/100 ($112.50) Dollars, on the

1st and 15th days of each month, commencing November 15, 1938."

The dispute herein concerns, principally, the interpretation to be given to the language above italicized, considered in the light of the facts and circumstances surrounding the agreement made between the parties and incorporated in the interlocutory decree.

Supplementing the foregoing provisions, the interlocutory decree provided that, on or before March 15th of each year, appellant should furnish to respondent a full, true, and correct copy of his Federal income tax return and all accompanying schedules filed in connection therewith, for the preceding calendar year, and to pay to the respondent any additional sum due, over and above the minimum amount for such preceding year, as prescribed in the agreement and interlocutory decree.

By other specifications of that decree it was provided (1) that if and when the first of the two children named therein arrived at the age of majority, or became emancipated, or was no longer living, the minimum monthly payment should be reduced to one hundred seventy-five dollars, and thereafter there should be deducted from the annual amount to which respondent might be entitled, under the percentage arrangement, the sum of fifty dollars per month; (2) that if and when the second of the two children reached the age of majority, or became emancipated, or was no longer living, the minimum monthly payment should be reduced to one hundred thirty-five dollars, and that thereafter the appellant should not be obligated to pay respondent any fixed percentage of his net income, but should be obligated to pay to respondent the sum of one hundred thirty-five dollars per month as alimony during the remainder of her life, unless she remarried; and (3) that in the event respondent remarried, appellant should continue to pay to respondent, as support money for each of the children, the sum of fifty dollars a month until such time as they respectively reached the age of majority, became emancipated, or were no longer living.

It is to be noted, at this point, that the interlocutory decree made no provision for any change in the amount of alimony and support money to be paid by appellant in the event that *he* should remarry.

The interlocutory decree also contained provisions requiring appellant to carry a certain amount of life insurance for the benefit of respondent and the children for certain periods of time; to make provision for the higher education of the children; and to pay any attorney's fees awarded to the respondent in the event it became necessary for her to appear in any court proceeding to enforce any provisions of the interlocutory decree.

Final decree of divorce, in all respects confirming the interlocutory decree, was entered May 8, 1939.

In July, 1939, about two months after the entry of the final decree, appellant filed a petition seeking modification of the interlocutory decree, upon the ground that payment of the monthly minimum of two hundred twenty-five dollars plus the expense of carrying the insurance provided for in the interlocutory decree was too burdensome upon him, in view of the small amount of his net earnings. A hearing was had on that petition and the answer thereto on August 21st, with the result that the petition was denied.

On October 17, 1940, appellant remarried and has ever since lived with his second wife.

In August, 1942, appellant filed a petition seeking a substantial reduction in the amount of the payments required by the interlocutory decree. That petition was predicated upon allegations to the effect that appellant had entered the military service of the United States, on appointment to the rank of captain in the army medical corps, with a fixed amount of pay; that by reason of his enlistment he had been required to discontinue his regular practice of medicine; that in the meantime he had remarried; that he had, up to that time, complied with the provisions of the interlocutory decree, but that he was no longer able to do so because of the decrease in the amount of his earnings; and that respondent, by virtue of her training as a nurse, was compe-

tent to earn for herself a substantial income. Upon a hearing of appellant's petition, the court on August 21, 1942, entered an order suspending that portion of the interlocutory decree which required appellant to pay respondent not less than two hundred twenty-five dollars a month, such suspension to continue so long as appellant held the rank of captain, and requiring him, instead, to pay to respondent, out of his salary as captain, the sum of one hundred fifty dollars a month. In all other respects the interlocutory decree was kept in full force and effect.

From the adverse portion of that order, the appellant herein took an appeal. On August 3, 1944, the order was affirmed by this court. *Dillon v. Dillon,* 21 Wn. (2d) 311, 150 P. (2d) 594.

In February, 1944, appellant was promoted to the rank of major, with a corresponding increase in pay. However, he did not proportionately increase the amount of his payments to respondent, but continued to pay her at the rate of one hundred fifty dollars a month.

In October, 1945, appellant was released from active military service and in December of that year renewed his practice of medicine in Seattle. After his terminal leave had expired, in January, 1946, he resumed the minimum monthly payments to respondent of two hundred twenty-five dollars, as required by the interlocutory decree.

During the years 1943, 1944, and 1945, while appellant was in military service, his monthly payments to respondent were in the fixed amount specified in the order of August 21, 1942, namely, one hundred fifty dollars, and, by reason of that fact and the further fact that appellant's annual income did not amount to twelve thousand dollars, there was no "percentage" portion of his income payable to respondent. In March, 1947, however, when appellant furnished respondent with a copy of his 1946 income tax return, it showed a "net professional income" of $17,347.72, which was considerably in excess of the $12,000 agreed upon between the parties, and prescribed in the interlocutory decree, as the basis for computing the percentage amount to be paid

annually to the respondent. Despite that fact, however, appellant paid the respondent for that year only $2,682.50, which was even less than the stipulated minimum amount and $2,445.65 less than respondent's computation of the amount owing to her under the terms of the interlocutory decree.

Respondent made demand for the full percentage amount claimed to be owing to her, and appellant, through his attorney, thereupon took the position, by letter, that because of his second marriage, in 1940, he was obligated to pay the percentage on only one-half of his "net professional income," asserting that, under the Federal income tax law, he was entitled to divide his income with his second wife, and that, under the wording of the interlocutory decree, he was required to pay to respondent a percentage of his net professional income only "as the same is computed for Federal income tax purposes." Upon that theory, appellant tendered to respondent the sum of $232.28 as constituting the balance of the amount owing by him for the year 1946.

Respondent refused to accept this amount and on July 17, 1947, filed her petition in the instant proceeding, asking that appellant be required to show cause why he should not be compelled to pay respondent the sum of $2,654.43, in compliance with the terms of the interlocutory decree, or be punished for contempt for failure to do so, or, in the alternative, that, if appellant's construction of the interlocutory decree be found correct, then for modification thereof, increasing the minimum monthly payments.

A show cause order was thereupon issued and, in response thereto, appellant filed an answer setting forth his interpretation of the interlocutory decree, also many of the facts which we have hereinbefore narrated, and alleging that since his remarriage in 1940 he had regularly filed his Federal income tax returns showing that his annual net professional income was equally divided between himself and his second wife; further alleging that copies of such income tax returns were regularly sent to respondent, and that she never objected thereto, but uniformly acquiesced

therein. He admitted, however, that a balance of $208.79 was still owing for the year 1946, which amount he tendered to the respondent and subsequently paid into the registry of the court. As an alternative counterpetition, appellant pleaded the state of his physical and financial condition and asked that, if respondent's construction of the interlocutory decree were held by the court to be controlling, then the decree be modified so as to relieve him from any obligation thereunder beyond that theretofore performed or presently being performed by him.

The matter came on duly for hearing on February 2, 1948, and during the trial appellant furnished respondent with a copy of his 1947 income tax return. That return showed appellant's net professional income for that year to amount to $25,704.16. During that same year, appellant had paid respondent the sum of $2,700, which was considerably less than what was owing to her under any theory. Conceding that he still owed respondent $1,513.01, under his theory of percentage payments, appellant paid her that additional amount at the time of furnishing her with a copy of his 1947 income tax return.

At the conclusion of the evidence submitted by both parties at that hearing, the trial judge rendered an oral decision indicating that respondent's interpretation of the interlocutory decree was correct and holding that for the years 1946 and 1947 she was entitled to be paid in accordance with the percentage table, using as a basis therefor appellant's entire net professional income before it was "divided" with his present wife for income tax purposes. At the same time, the trial court continued the matter until the fall term of court for further evidence with reference to appellant's physical condition and earning ability. Pending the period of continuance, appellant paid into the registry of the court, on February 18, 1948, the sum of $2,445.65, and on March 12, 1948, the sum of $3,213, these being the additional amounts claimed by the respondent for the years 1946 and 1947 respectively, such payments being made upon the con-

dition that they be so held until the final determination of the case.

On October 4, 1948, further evidence was heard on appellant's counterpetition for modification of the interlocutory decree and for reduction in the amount of payments for alimony and support. After hearing the evidence, the trial court rendered an oral decision, denying appellant's petition for modification. In accordance with its two oral decisions, the trial court on October 8, 1948, entered the order from which this appeal was taken.

■ The first question presented upon the appeal involves the construction to be placed upon that portion of the interlocutory decree, quoted above, relating to the payment of alimony and support money. Utilizing the material furnished by the briefs of respective counsel, we formulate the question to be here considered, as follows:

Where a property settlement agreement, which is subsequently incorporated in an interlocutory decree of divorce, provides that the husband shall pay to the wife from whom he is being divorced, as alimony and support money for the wife and children, a certain percentage or proportion of his annual net professional income, as the same is computed for Federal income tax purposes, is the husband, upon remarriage, entitled to compute the amount of such required payments on the basis of one half of his net professional income, upon the theory that he and his second wife each have the right, under existing Federal income tax laws, to claim, and do claim, one half of such net professional income and accordingly file separate income tax returns; or, on the contrary, must the husband, even though remarried, continue to make payments to his first wife on the basis of his entire net professional income?

The question thus propounded must be considered in the light of the full content and context of the interlocutory decree and the facts and circumstances which led to the pronouncement of that decree. As stated above, the provision with reference to alimony and support money was the result of a definite agreement between the parties at the time of

the original trial. At that time, so far as the record herein discloses, there was no discussion nor intimation relative to a possible remarriage of *appellant* and the effect of such a venture upon the contributions which respondent was to receive from him.

It is obvious, of course, that the parties had definitely in mind the idea that appellant's annual net professional income would in time amount to, and even exceed, twelve thousand dollars, for the interlocutory decree specifically mentioned that figure and used it as a basis for computing the percentage payment. The interlocutory decree provided for the happening of numerous contingencies, among which was the possible remarriage of the *respondent*. Surely, if there had been any mutual intention that remarriage by the *appellant* was in any way to affect the amount of the required payments, it would have been stipulated by the parties and made a part of the interlocutory decree. In the absence of evidence on that score, it is not to be presumed that respondent, or even appellant, contemplated the relinquishment by respondent of one half of the amounts coming to her if and when the appellant should remarry.

We are of the opinion that the parties by their agreement meant, and that the interlocutory decree contemplated, that when appellant's professional income rose to a certain sum, then the former wife and children were to be entitled to a certain percentage thereof. We are of the further opinion that the phrase "as the same is computed for Federal income tax purposes" was employed merely as a convenient and uniform method for determining the exact amount of appellant's net income from year to year, and also as an assurance of the correctness of such computation, under the law prescribing severe penalties for making false returns.

These conclusions are fortified by the rule, adopted and frequently expressed by this court, that a divorced husband cannot, by mere remarriage, escape the obligation, imposed upon him by the decree of divorce, to pay alimony and support money for the benefit of his former wife and

their children, even though the additional burdens occasioned by his remarriage may seriously affect his ability to comply with the terms of the decree, or may tend to exhaust his earnings. *State ex rel. Brown v. Brown,* 31 Wash. 397, 72 Pac. 86, 62 L. R. A. 974; *Haakenson v. Coldiron,* 190 Wash. 627, 70 P. (2d) 294; *Fisch v. Marler,* 1 Wn. (2d) 698, 97 P. (2d) 147.

With respect to the construction to be placed upon the wording of the interlocutory decree here in question, appellant makes the further contention that respondent is now estopped to claim a construction at variance with that alleged to have been previously adopted by the parties. This contention is predicated upon the fact that in 1942, and again in 1943, appellant furnished respondent with a copy of his income tax returns for the respectively preceding years, showing that he and his second wife were filing separate returns, and yet respondent made no objection thereto until 1947, when the present proceeding was instituted.

Appellant relies upon the rule, as stated in 49 C. J. S. 867, Judgments, § 436, that a construction adopted or acquiesced in by the parties will not be changed without strong reason.

We do not dispute the rule, but we do not deem it properly applicable here. In the first place, neither in 1942 nor in 1943 was any question presented between the parties as to the legal effect of appellant's remarriage, so far as his obligations under the interlocutory decree were concerned. As hereinbefore stated, that eventuality had no legal effect whatever on such obligations. Appellant simply did not pay the amount he was obligated to pay, and the failure on the part of the respondent immediately to hale him into court for contempt did not constitute acquiescence by her either in his act or in his alleged interpretation of the decree. In the next place, within a very few months after making his income tax return in 1942 appellant entered the military service, and at the time of making his return in 1943 he was still in that service. Under the circumstances, there was very little that respondent could have done about the matter in 1942, and nothing at all in 1943. In the third place, re-

spondent was not concerned with the manner in which appellant made his income tax returns. If, by making separate returns for himself and his second wife, he could save a substantial amount of money which would otherwise have gone for taxes, that would not be objectionable to respondent; in fact, it might redound to her ultimate benefit, for there would be that much less chance of his being able to obtain a reduction in the amount of alimony and support money payable to her. Finally, even assuming that respondent by her conduct acquiesced in appellant's asserted interpretation of the interlocutory decree, we think that the facts in this case present "strong reason" for alleviating the result of such alleged acquiescence.

For the various reasons hereinbefore given, we uphold the trial court's construction of the interlocutory decree and further hold that respondent did not by any conduct on her part acquiesce in a different interpretation thereof.

Appellant's final contention is that the trial court in any event should have modified the decree by scaling down the schedule of payments, and that its failure to do so constituted error. This contention is based upon an alleged change of circumstances justifying his petition in that respect. We have carefully read the evidence and are unable to accept appellant's view. Whatever change in circumstances may have taken place since the entry of the decree, they are, in our opinion, more to his advantage than otherwise, except for the fact of the additional burden attendant upon his second marriage.

The record shows that in 1946 his net professional income amounted to $17,347.72, and that in 1947 it amounted to $25,704.16. His cash receipts for the first nine months of 1948 indicate a net income of more than $20,000. These amounts are considerably more than he was earning at the time of his second marriage or for several years thereafter. At the time the interlocutory decree was entered, and for some time afterwards, appellant was required to pay income tax on the amounts he paid to respondent, and she in turn paid no income tax on the amounts so received. Since 1942,

however, by reason of changes in the income tax laws, the situation is reversed. He is now allowed to deduct the amount paid to her, and she is required to pay an income tax thereon. Appellant has excellent prospects for an increase in his financial returns from his profession, while respondent has little hope of being able to supplement the amount of alimony receipts by personal earnings. While appellant is laboring under some physical handicap, it does not appear from the evidence that, as yet, it has seriously interfered with his ability to continue the practice of his profession, or that by reason thereof he is presently unable to comply with the terms of the interlocutory decree. We agree with the trial court that appellant's petition for modification should be denied.

Respondent has moved in this court for an award of a reasonable attorney's fee on the appeal. The interlocutory decree provides that in any proceeding in which the respondent is seeking, in any court, the enforcement of the provisions of the decree, such fee may be awarded. We think that the sum of $250 is a reasonable fee in this instance.

The order of the trial court will be affirmed, with an allowance of $250 to respondent for her attorney's fee on this appeal. It is so ordered.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.