[No. 33854.   Department One.   April 18, 1957.]

CARL M. BERRY, *Appellant*, v. GRACE M. BERRY, *Respondent*.[1]

[1]Reported in 310 P. (2d) 223.

*Brockman Adams, John T. Piper,* and *Little, LeSourd, Palmer, Scott & Slemmons,* for appellant.

*Hodge, Mann & Peterson,* for respondent.

HILL, C. J.—This is a proceeding in which a former husband was required to appear and show cause why he should not pay to his former wife money claimed to be due her under a decree of divorce. Despite their divorced status, we shall hereinafter refer to the parties as husband and wife.

We are confronted at the outset with a jurisdictional question, it being conceded that, unless the money claimed to be due was alimony or support money, contempt proceedings were not the proper remedy. *Valaer v. Valaer* (1954), 45 Wn. (2d) 565, 277 P. (2d) 326; *Millheisler*

*v. Millheisler* (1953), 43 Wn. (2d) 282, 261 P. (2d) 69; *Robinson v. Robinson* (1950), 37 Wn. (2d) 511, 225 P. (2d) 411; *Corrigeux v. Corrigeux* (1950), 37 Wn. (2d) 403, 405, 224 P. (2d) 343; *State ex rel. Adams v. Superior Court* (1950), 36 Wn. (2d) 868, 871, 220 P. (2d) 1081.

The parties to this litigation, in contemplation of divorce, had signed what was designated a property settlement agreement, by the terms of which the wife, *inter alia*, was to have custody of the minor child of the parties and the husband was to pay sixty dollars a month for his support and maintenance.

The paragraph of that agreement which is the basis of the present controversy reads in part as follows:

"Each year hereafter, the Husband shall pay to the Wife, as support money, a sum equal to 12% of his annual net income (before Federal Income Tax) in excess of $5,000.00 as shown upon his Federal Income Tax Return. Such sum shall be due and payable on or before April 1st of each year, commencing April 1, 1952. Said payment due April 1, 1952, shall be for the full calendar year of 1951. The Husband shall furnish to the Wife such proof as may be reasonably necessary to establish the amount of said net income. In the event the Wife is not satisfied with such proof, she shall be permitted, through a licensed public accountant at her own expense, to examine the business and other records of the Husband for the purpose of verifying the correctness of said figure."

The payments were to continue until the happening of any one of the following contingencies:

"(a) The remarriage of the Wife,

"(b) When STEPHEN [the child] becomes permanently self-supporting, . . .

"(c) Notice in writing to the Husband by the Wife of her election to sell [the family home, which she was permitted to occupy by the terms of the agreement],

"(d) The expiration of 8 years from the execution of this Agreement."

Paragraph XII of the agreement relieves each party "of all further responsibility for the support and maintenance of the other party . . . except as herein provided."

The divorce decree contains five orders, the first and last awarding the wife a divorce and dismissing the husband's amended complaint with prejudice; the second providing for the custody of the child; the third directing the husband to pay sixty dollars a month for the support of the child; and the fourth reading as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Property Settlement Agreement, dated the 20th day of June, 1951, which was filed herein as an exhibit on the 21st day of June, 1951, be, and the same is hereby, ratified, confirmed and approved, and the terms thereof are hereby made a part of this Decree by this reference thereto as though fully set forth herein."

By this order, the agreement of the parties became merged in an order of the court, and the inquiry, technically at least, is as to what the court meant, not what the parties meant. *Robinson v. Robinson, supra.*

If, as in this case, the parties designate certain payments as support money, such designation, when it becomes part of a decree, will be accepted as representing the intention of the court unless other portions of the decree make it apparent that the payments were intended as part of a property settlment. See *Heuchan v. Heuchan* (1951), 38 Wn. (2d) 207, 228 P. (2d) 470, 22 A. L. R. (2d) 1410; *Troyer v. Troyer* (1934), 177 Wash. 88, 30 P. (2d) 963. See, also, *Millheisler v. Millheisler, supra,* where the converse of the present situation was presented and the designation used by the parties in their agreement made it clear that certain payments were intended as part of a property settlement and not support money.

The checks sent by the husband in claimed fulfillment of his obligations under that paragraph were marked "Support Money in Full" or "support in full." We regard it as significant that the interpretation placed by the husband on the decree is consistent with our holding that the payments referred to are support money and is inconsistent with his present contention.

██  The fact that the amount to be paid is not fixed and certain but is dependent upon the earning capacity of the husband, does not prevent its being alimony or support money. *Heuchan v. Heuchan, supra* (p. 217). Consequently, we agree that the trial court did have jurisdiction to consider the matter on a hearing to show cause why the husband should not be punished for contempt.

On the merits, there is sharp disagreement as to how the support money payments were to be computed. The payments made by the husband were on the basis of the "annual net income" on which his income tax was computed. The wife contends

". . . that the term 'net income' as used in the agreement was used by the parties in its ordinary sense, that is, the amount remaining after deducting ordinary business expenses from gross income, and that reference to federal income tax returns was only made to furnish Respondent [wife] some fairly reliable source of information as to the amount of Appellant's [husband's] income."

It seems to be conceded that the husband, under any system of computation, did not have a net income in excess of $5,000 in 1953; hence, no payments were due the wife for that year.

In 1951 and 1952, on his computations, his net income exceeded $5,000, and he made payments on the excess, which the wife accepted but now contends were not large enough. In 1954, the husband's income tax return showed taxable income of $4,130.14, or $869.86 less than $5,000. The trial court held that the income on which the twelve per cent due the wife was to be computed should have been augmented by the following amounts:

1951: Personal and dependency exemptions which he had taken in arriving at his net income ($600 for himself; $600 for a newly acquired wife; $600 for the son for whose support he was paying $60 a month under the decree, it being expressly stipulated in the agreement between the parties that the husband "has the right to claim STEPHEN BERRY as an income tax deduction.") ......$1,800.
Maximum amount deductible from adjusted

gross income when allowable personal contributions, taxes, interest, etc., are not itemized ..............................$1,000.    $2,800.

1952: Personal a n d dependency exemptions (same as 1951) ........................$1,800.
Deductions from adjusted gross income for allowable personal contributions, taxes, interest, etc. ..............................$1,138.48   $2,938.48

1954: Personal a n d dependency exemptions (same as 1951, except that son was not claimed as a dependent) ................$1,200.
Deductions from adjusted gross income for allowable personal contributions, taxes, interest, etc. ............................$1,177.70
Portion of depreciation taken on business equipment, found by trial court to be unreasonable ............................$2,357.76

                                         $4,735.46
Less the amount by which, as heretofore indicated, his taxable net income for 1954, as computed by him, was under $5,000........$ 839.86   $3,865.60

                                                     $9,604.08

Twelve per cent of the three year total of $9,604.08 equals $1,152.49. (The trial court's computation made it $1,198.97; we have been unable to work out an adjustment.) It is from an order directing the husband to pay $1,198.97 in monthly installments of $200 each that this appeal is taken.

■ We are not in accord with the construction placed on the term "net income" by the wife and adopted by the trial court, in the face of a specific declaration that the husband shall pay to his wife a certain percentage "of his annual net income (before Federal Income Tax) in excess of $5,000 as shown upon his Federal Income Tax Return." It is difficult to conceive of more apt language to indicate an intention that the payments were to be a percentage of the husband's net income as computed for income tax purposes.

It seems not only proper, but in many instances quite desirable, that, after provision is made for certain basic needs in an alimony or support decree, additional payments

be based upon the husband's net income "as shown by his Federal Income Tax Return."

Nor does the case of *Dillon v. Dillon* (1949), 34 Wn. (2d) 12, 207 P. (2d) 752, relied upon by the wife and the trial court, support the contention that dependencies, exemptions, and depreciation allowed by the Federal income tax law are to be subject to elimination or reduction as not being within the contemplation of the parties. In that case, the wife was to receive as support money "one-third of the first Twelve Thousand ($12,000) Dollars" of the husband's "annual net professional income, as the same is computed for Federal income tax purposes. . ." Dr. Dillon's income, as computed for income tax purposes, was accepted without question as to exemptions, deductions, and depreciation. No question arose until he took the position that, having married again, his income was community property, and "under the Federal income tax law, he was entitled to divide his income with his second wife. . ." It was the division and not the computation of his "annual net professional income" that was challenged. Dr. Dillon could not, by remarriage, escape the obligation imposed upon him by the decree of divorce to pay alimony and support money for the benefit of his former wife, and we refused to modify the decree as he requested, or to permit him to make his own modification, as he had attempted.

We reserve the hypothetical questions posed by counsel as to the effect of a change in the income tax law subsequent to a decree such as the one with which we are here concerned, where the change would materially increase or reduce exemptions or deductions and thus materially reduce or increase the alimony or support money payable to the wife.

A divorce decree as to alimony and support money based upon conditions then existing "may be modified, altered and revised by the Court from time to time as circumstances may require." Laws of 1949, chapter 215, § 11, p. 701 [RCW 26.08.110]. See *Gordon v. Gordon* (1954), 44 Wn. (2d) 222, 226, 266 P. (2d) 786; *Millheisler v. Millheisler,*

*supra; Bartow v. Bartow* (1942), 12 Wn. (2d) 408, 121 P. (2d) 962. This rule would seem to provide the flexibility necessary to deal with such a situation. In any event, we are not, by tying provisions for alimony or support money to computations based upon Federal income tax laws which may be changed by each succeeding Congress, abrogating our right to modify such decrees on proper showing. There is here no petition for modification and no claim of any material change in either the terms of the income tax law or the status of the parties.

The agreement of the parties has become, as we have indicated, a part of the decree. The parties and the court must have contemplated, in using the words, "his annual net income (before Federal Income Tax) . . . as shown upon his Federal Income Tax Return," the right of the husband to take the then-allowable exemptions, deductions, and depreciation in computing his annual net income for the purpose of determining the amount to which the wife was entitled. However, as to the claimed excessive business depreciation taken by the husband, we have made a detailed examination because we are satisfied that deductions allowed by the Federal income tax law cannot be used as a shield for deductions which, while not a fraud upon the government, might be a fraud upon the wife.

The trial court was of the view that reasonable depreciation should be taken into consideration in determining net income, and made no criticism of the depreciation on tangible business property in the amount of $481.10, taken in 1951, and $346.48, taken in 1952. However, it held the $3,342.82 claimed for depreciation in 1954 to be unreasonable, and concluded that a reasonable amount was "10% of Plaintiff's net income before any deduction for depreciation is taken."

We hold that good faith is the proper test in such matters, and that no arbitrary percentage limitation can be established. The husband was engaged in an aerial photography business. The questioned depreciation was made up primarily of three items: (1) an airplane which he had

purchased for $5,150 and which he was depreciating over a period of five years (his plane rentals having amounted to from 100 to 250 hours a year at $18 to $33 an hour); (2) a restitutional enlarger which he had acquired at a cost of $708.25, to avoid transportation and laboratory expenses necessary when he had to have enlarging done by commercial laboratories. He was depreciating the restitutional enlarger over a period of ten years; (3) a Chevrolet station wagon costing $2,842.17, which he was depreciating over a period of three years.

The husband testified—and that testimony was not challenged—that the purchase of these items of equipment was necessary to offset the heavy expense of renting equipment. It is apparent that the rental charges would have exceeded the depreciation. There is no contention that any of the equipment on which depreciation was being claimed was not necessary to the transaction of his business, or that the depreciation claimed was in excess of that allowed by the Federal government for income tax purposes.

On one item only, do we find that the wife has any justifiable cause for complaint. We do not believe that the court had in contemplation, in making the decree, that the husband by a second marriage could reduce the amount payable as support money to his former wife. While the husband here has not, as in *Dillon v. Dillon, supra*, attempted to divide his income with his second wife, he has claimed her as a dependent and has thereby reduced his net income by $600 each year. This is of no consequence so far as the years 1953 and 1954 are concerned, as it would take more than an additional $600 to bring his income up to $5,000 in either of those years, and no support money is payable to the wife on income under that amount. However, in 1951 and 1952, the income on which his payments were based should have been $600 more and the wife should have $72 more for each of those years. She is also entitled to six per cent interest on the additional amounts from the dates the payments became due, or on $72 from April 1, 1952, until paid, and on $72 from April 1, 1953, until paid.

The order appealed from should be modified as herein indicated.

Neither party will recover costs on this appeal.

MALLERY, FINLEY, OTT, and FOSTER, JJ., concur.

[1]Reported in 310 P. (2d) 254.