[No. 34613. Department One. August 21, 1958.]

D. CLINTON PRESCOTT, *Appellant,* v. RUTH D. PRESCOTT, *Respondent.*[1]

[1]Reported in 329 P. (2d) 200.

*Little, LeSourd, Palmer, Scott & Slemmons, F. A. Le-Sourd,* and *John T. Piper (Anthony J. Felice* of counsel), for appellant.

*Mucklestone & Mucklestone, John P. Mucklestone,* and *Patricia J. Mucklestone (Gordon F. Crandall* of counsel), for respondent.

FINLEY, J.—This is a proceeding in which a former husband was required to appear and show cause why he should not be adjudged in contempt for failure to comply with the alimony provisions contained in a decree of divorce. Despite the divorced status of each of the parties, we shall hereinafter refer to them as husband and wife.

The parties had been married for approximately twenty-eight years when the husband instituted divorce proceedings. The divorce was granted to the wife, on her cross-complaint. The husband, at the time of the divorce, was and is now an independent representative of John Nuveen & Company in connection with the underwriting of municipal securities. His compensation or income is derived from a retainer as well as from commissions on the placing of securities through John Nuveen & Company.

The portion of the divorce decree which is the basis of the present controversy reads as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff shall pay to defendant, by way of alimony, $600.00 per month, commencing with the month of November, 1952, plus 25% of his *net taxable earned income* in excess of $24,000.00 per annum, exclusive of property heretofore divided, for a period of ten years and three months. At the end of that period (10 years and three months), inclusive of the first and last months, he shall pay by way of alimony to defendant 25% of his *earned net income* over $18,000.00 per annum, PROVIDED: . . .

"(1) The $600.00 per month alimony shall cease at the time that John attains his 21st birthday, at which time the alimony shall be automatically reduced to $500.00 per month;

" . . .

"At the end of each taxable year plaintiff shall supply defendant with a statement of his *earned net income,* certi-

fied by his accountant, and defendant shall be privileged to have a certified public accountant of her own choosing examine said accounting, and unless her accountant questions the correctness of same, defendant shall be bound thereby; . . . " (Italics ours.)

Both parties concede that the terms, *net taxable earned income*, and, *net earned income*, were intended to mean the same thing. The problem then is to determine that meaning in relation to the present controversy.

It is clear and uncontroverted that the word *earned* was used to indicate that the wife should receive no portion of the husband's income attributable to property and investments. The husband's *earned income* in the years prior to 1956 was not large enough for the percentage payments to come into effect; but, in 1956, the husband received about eighty thousand dollars in *earned income*.

The wife's position is that the reference to *taxable* net income was inadvertent—or at the most, was meant to refer to the income tax returns as a convenient method for determining the exact amount of the husband's net earned income. The husband, on the other hand, contends that the word *taxable* was used to indicate an intention that the percentage payments were to be determined from the husband's net earned income *as computed for income tax purposes*.

As is readily apparent from the volume of cases under the income tax laws, the term, *net income*, is difficult to define and apply. But the Federal income tax law and the cases thereunder have given the term, *net income*, a reasonably ascertainable meaning. This large body of statutory and case law is available as a uniform and convenient method for determining *net income* for alimony purposes.

■ The trial judge held that the divorce decree contemplated tying the percentage alimony payments to the Federal income tax laws. We agree. But the trial judge held that certain provisions in the income tax laws were not within the contemplation of the divorce decree. We disagree. We believe that if the Federal income tax laws are to be available as a uniform and convenient method for de-

termining net income for alimony purposes the courts should refrain from engrafting exceptions upon that body of the law; *i.e.*, exceptions which would be applicable only in the field of alimony. The creation and application of such exceptions in the field of alimony would destroy the practical utility and the very purpose of referring to the Federal income tax laws—to simplify the computation of alimony, to minimize disputes as to alimony, and to avoid needless and costly litigation in an area where ex-spouses tend to be all too prone to litigate. If the divorce court does not intend that Federal income tax laws should apply in toto, it is a reasonably simple matter to spell out exceptions clearly and specifically in the divorce decrees.[2] As stated in *Berry v. Berry* (1957), 50 Wn. (2d) 158, 310 P. (2d) 223, we reserve the question "as to the effect of a change in the income tax law subsequent to a decree . . . where the change would materially increase or reduce exemptions or deductions and thus materially reduce or increase the alimony or support money payable to the wife." And, "we are not, by tying provisions for alimony or support money to computations based upon Federal income tax laws which may be changed by each succeeding Congress, abrogating our right to modify such decrees on proper showing." *Berry v. Berry, supra.*

 The trial court refused to apply the spread-back provision of the law (§ 107(a) of the Internal Revenue Code of 1939; § 1301 of the Internal Revenue Code of 1954). This was error. The wife conceded at the trial that a fifty thousand dollar commission payment received by the husband in 1956 was earned by the husband over a period of forty-two months. Under the applicable spread-back provisions of the Internal Revenue Code, *supra*, the husband, in this instance, was required to spread this income back over that forty-two month period. Similarly, his net earned income for alimony purposes must be recomputed for the previous

[2] This would be analogous to the situation in the instant case, in which the divorce decree specifies that the wife is only to receive percentage-alimony payments from the husband's *earned* net income as distinguished from the husband's *total net income*.

three years. Only that portion of the fifty thousand dollar commission apportioned to 1956 under the income tax laws is to be used in computing the husband's net earned income for 1956 in determining the alimony payments due to the wife.

 The trial court refused to allow the husband to deduct alimony payments in computing further alimony payments due to the wife. In so far as the prior alimony payments constituted support money for the wife and not for the children, this was error. Alimony paid for the support of the wife, as distinguished from alimony paid for the support of the children, is a proper deduction in determining net income for income tax purposes. Internal Revenue Code of 1939, § 22 (k) and § 23 (u); Internal Revenue Code of 1954, § 71 and § 215. The complicating factor in the instant case is the fact that the husband pays only *percentage* alimony on the *earned* portion of his total income, whereas, under the income tax laws, alimony is deductible in computing *total* net income. In light of this, we believe that the alimony deductions must be apportioned between earned and non-earned income; only that portion properly apportioned to earned income is deductible in determining further alimony.[3] The husband's contentions with respect to deducting both the fixed and the percentage alimony in computing net income are correct.

██ ██ The trial court allowed the husband to deduct all expenses connected with the earning of his earned income, in so far as permitted by the income tax laws, in determining his earned net income for alimony purposes. This was correct. The expenses were incident to earning the income on which alimony is to be paid, and they should *not* be apportioned between earned and non-earned income. However, the trial court also allowed the husband to deduct the

---

[3]For example, assume the husband had a total income of ten thousand dollars; assume further that he had earned income of four thousand dollars, and non-earned income of six thousand dollars. In that case, *forty per cent of the alimony payments* would be properly apportioned to earned income in computing further alimony payments due to the wife.

full income tax exemption for himself and his full non-business income tax deductions in computing his net earned income for alimony purposes. This was error. For income tax purposes these deductions are applied to his *total* adjusted gross income in determining his *total* net income. Accordingly, these deductions must be apportioned between earned and non-earned income (see Footnote 2, *supra*); only the portion of these deductions properly apportioned to earned income is deductible in computing earned net income for alimony purposes.

In the trial court the husband contended that, since the income splitting provision which permits him and his new wife to split their community income was a part of the Federal income tax law when the instant divorce decree was entered (Internal Revenue Code of 1939, § 51 (b)); the holding in *Dillon v. Dillon* (1949), 34 Wn. (2d) 12, 207 P. (2d) 752, is inapplicable. The trial court held against him. The husband has not appealed from that determination, and he is bound by it. The question is not before the court herein, and we expressly do not pass on it.

The husband contends that the trial court erred in not allowing him to deduct the salary paid to his present wife as a business expense. The trial court found that his claim was not made in good faith. This is the proper test. *Berry v. Berry, supra.* The finding is supported by the record.

The husband also contended that he should be allowed to deduct a loan which had become a "bad debt." He contends that it should be attributable to earned income, since he obtained stock in the company involved as payment for earnings in a previous year, and since he made the loan to preserve the value of that stock. We believe that the trial court was correct in holding that the husband was not entitled to deduct this "bad debt." The stock had become an investment, and the loss was properly attributable to non-earned income.

The judgment of the trial court must be reversed and re-

776

manded for proceedings in accordance with the views expressed herein. It is so ordered. The respondent will have her costs in this court.

HILL, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

December 9, 1958. Petition for rehearing denied.