IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 86500-5-I |
| JON-MICHAEL PHILIP SMITH, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| RACHEL LEE ANN SMITH, | |
| Respondent. | |

DÍAZ, J. — Former spouses Jon-Michael Philip Smith and Rachel Lee Ann Smith (LaMantia)[1] disagree about the scope of the trial court's spousal maintenance award. Smith claims he should not be obligated to transfer a portion of a sales commission he received after the period of maintenance ended to LaMantia. We disagree and affirm.

## I.      BACKGROUND

In 2018, Smith and LaMantia resolved their divorce via binding arbitration. It was determined that Smith would pay spousal maintenance starting in June 2018

---

[1] At the time of the dissolution, Respondent's name was Rachel Lee Ann Smith. Respondent is now known as Rachel Lee Ann LaMantia. Since recent court documents refer to her by that name, we will do so in this opinion.

and through December 2020, pursuant to the following formula: a monthly payment of $1,000 to $2,500 each month and "25% of the net amount *received/earned* as additional compensation *in any manner or form whatsoever* beyond the $140,000 base salary from his current or new employment *during the period of maintenance obligation*." (Emphasis added.)

In July 2020, Smith's employer adopted a compensation plan under which Smith received an approximately $285,000 sales commission in January 2021.

Two years later, LaMantia moved to hold Smith in contempt for failing to pay her 25% of the commission he received in 2021. The court agreed additional maintenance was due and Smith timely appeals.[2]

## II.    ANALYSIS

### A.    Maintenance Period and the Commission

#### 1.  Standards of Review

Under RCW 26.09.090(1), a trial court may award maintenance "in such amounts and for such periods of time as the court deems just." Trial courts have broad discretion to award maintenance and an award will not be overturned on appeal absent a showing of manifest abuse of discretion, i.e., when a decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Wilcox, 3 Wn.3d 507, 517, 553 P.3d 614 (2024). A trial court's findings of fact in support of a maintenance award are reviewed for substantial evidence.

---

[2] Smith appeals from three orders from the trial court: its (1) order on his February 2024 motion for reconsideration, its (2) February 2024 order awarding fees to LaMantia, and its (3) order on LaMantia's March 2024 motion for contempt regarding, inter alia, maintenance.

In re Marriage of Leaver, 20 Wn. App. 2d 228, 238, 499 P.3d 222 (2021).

Here, Smith does not challenge the court's *factual* findings, which we may treat as verities on appeal. In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). Rather, he disputes the legal conclusions flowing from them. There too, however, we review how a court applied RCW 26.09.090 to those facts for manifest abuse of discretion, a "very deferential" standard, where we do not substitute our judgment for that of the trial court. Leaver, 20 Wn. App. 2d at 238. And we review a trial court's decision in a contempt proceeding for an abuse of discretion. In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).

We review de novo the language in a dissolution decree, applying the general rules of construction that apply to statutes and contracts. In re Marriage of Smith, 158 Wn. App. 248, 255-56, 241 P.3d 449 (2010). Likewise, we interpret CR 2A separation agreements by applying normal contract principles. In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013).

2. Discussion

The trial court found that Smith "earned" the 2021 commission in 2020, i.e., during the maintenance period and, thus, LaMantia was entitled to a portion of it, under the terms of the dissolution decree. We agree and begin by examining the decree's key terms.

The decree makes clear that "additional compensation" includes amounts both "received" *or* "earned." Wash. Fed. Sav. & Loan Ass'n v. Alsager, 165 Wn. App. 10, 16, 266 P.3d 905 (2011) (holding that the forward slash symbol may generally be construed as "or"). Thus, it is immaterial that Smith only "received"

the compensation in 2021. And to "earn" is defined as "*to come to be* duly worthy of or *entitled* or suited *to*." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/earn (last visited Jun. 30, 2025) (emphasis added); Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC, 18 Wn. App. 2d 600, 611, 492 P.3d 843 (2021) (holding that courts may turn to the dictionary definition of an undefined contract term to assess its meaning). We hold that, under this "ordinary, usual, and popular meaning," Smith became "entitled to" the commission received in 2021 for the work he performed in 2020, and thus "earned" said commission in 2020. Condon v. Condon, 177 Wn.2d 150, 162-63, 298 P.3d 86 (2013).

In addition, the decree specifies that Smith must pay maintenance on additional compensation earned "*in any manner or form whatsoever.*" State v. Durrett, 150 Wn. App. 402, 410, 208 P.3d 1174 (2009) (noting that a broad meaning is accorded the term "any" in Washington). Thus, the exact contractual, administrative, or financial vehicle of the compensation is also irrelevant.

Finally, the decree makes clear it covers such earnings *"during the period of maintenance obligation."* There is no dispute that the period of the maintenance obligation lasted until the end of 2020, and Smith provides no authority for the proposition that income contingent on a future event may not be awarded. See, e.g., Marriage of Estes, 84 Wn. App. 586, 590-91, 929 P.2d 500 (1997) (holding to the contrary).

Therefore, the trial court did not legally err in concluding that the plain language of the decree establishes that it applies broadly to the specified

4

compensation in the covered period, which Smith became "entitled to," or abuse its considerable discretion by awarding additional maintenance.

In response, Smith first points to alternate provisions of the decree. Specifically, he argues the commission was outside his maintenance obligations because the decree: (1) states that Smith's spousal support obligation "expire[d]" in December 2020, (2) states that he must make payments the "1st day of each month," so his last maintenance payment was on December 1, 2020, and (3) only required Smith to provide copies of his federal tax returns from 2018 through 2020, not 2021.

Smith's reliance on these provisions flies in the face of basic principles of contractual interpretation. It is axiomatic that we must review the agreement as a whole, seek to give meaning to each provision, and seek to harmonize contract terms which may appear to conflict. Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007). Smith's interpretation would render meaningless the maintenance provisions reviewed above. Moreover, we give greater weight to specific terms, rather than general terms. Adler v. Fred Lind Manor, 153 Wn.2d 331, 354, 103 P.3d 773 (2004). Thus, the maintenance provisions reviewed above should and do guide our analysis.[3]

---

[3] For similar reasons, we reject Smith's reliance on his understanding of the terms of his company's contract. In relevant part, Smith's company's compensation plan specifies, "[c]ommissions based on [sales] do not become *earned* for a transaction until the Company receives full customer payment on the transaction; *however, recoverable Commission advances may be payable*." (Emphasis added.) It also states, "[c]ommission advances will become *earned* only when customer payment on the underlying transaction is made in full; partial customer payment will result only in pro-rated earning of the applicable Commission advance. Unearned Commission advances are *recoverable* by the Company . . . [.]" (Emphasis

Finally, Smith argues that the trial court's maintenance award violates federal and state tax law. But he provides no legal authority for the proposition that federal tax law binds a court's interpretation of a dissolution decree. And if we were to import the federal definition of certain terms into the decree, we would be "[a]dding terms to the contract," which "amount[s] to writing a new contract," which we are not permitted to do. In re Marriage of Mudgett, 41 Wn. App. 337, 341, 704 P.2d 169 (1985).

Moreover, the authority Smith cites is distinguishable. For example, unlike in this case, the divorce decree in Prescott v. Prescott, 52 Wn.2d 769, 772, 329 P.2d 200 (1958), expressly tied maintenance payments to federal income tax laws. Here, the decree did not.

For all of these reasons, Smith's arguments do not succeed, and we hold that the court correctly based its maintenance award on tenable grounds, under the plain meaning of the decree. Pascale, 173 Wn. App. at 841. The award was not an abuse of discretion.[4]

B.      Smith's Pro Se "Supplemental" Briefing

---

added.) Smith's argument also fails because he provides no legal authority for the proposition that the language of an employer or third party contract may define the terms of a court order. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Instead, we look at a document's intent by analyzing its "objective manifestations" rather than the "unexpressed subjective intent" of a given party. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[4] We do not reach the other assignments of error in Smith's opening brief—as to the court's attorney fee award to LaMantia or its denial of Smith's motion for reconsideration—as he provides no substantive argument for either. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Smith's appellate counsel withdrew after filing his opening brief, and Smith then filed pro se a second brief before LaMantia filed her response. Beyond reiterating the opening brief's arguments, it additionally: (1) contends LaMantia's CPA report the court relied upon is fraudulent and violates ethical standards, and (2) argues the court "failed to consider financial hardship." LaMantia requests that we strike his motion to allow this "supplemental" brief.

RAP 10.1(b) provides, "The following briefs may be filed in any review: (1) *a* brief of appellant or petitioner. . .[,]" and its straightforward implication is that only one such brief may be filed. (Emphasis added.) However, RAP 10.1(h) grants this court discretion to permit the filing of briefs other than those listed in the rule.

While we deny the motion to strike, we decline to consider the merits of Smith's "supplemental" filing because he does not support his additional arguments with any evidence in the record or relevant legal authority. We need not consider arguments that a party does not support by references to the record, meaningful analysis, or citation to pertinent authority. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

Smith also filed a second pro se "supplemental brief" after LaMantia filed her response, purportedly addressing issues raised in her brief. However, its substantive content is primarily newfound argument, and we hold the RAPs do not condone our consideration of this second "supplemental brief" he attempts to file.

RAP 1.2 allows a court to waive rules "to serve the ends of justice," and we "liberally interpret[ ]" the rules "to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a), (c). However, RAP 10.3(c) directs that a reply

brief must be "limited to a response to the issues in the brief to which the reply brief is directed." And in exercising our discretion over whether to use RAP 1.2 to reach an appeal's merits, we decline to do so when there is a compelling reason not to, such as prejudice to the respondent. Bergerson v. Zurbano, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018); see also RAP 18.8 (allowing us to waive the requirements of the rules of appellate procedure where we find it appropriate).

Here, LaMantia would be prejudiced if we reached Smith's claims as she has not been afforded the opportunity to reply to his new arguments. And Smith does not persuade us that the ends of justice would be served by considering this brief because he could have raised the issues in his earlier supplemental brief. In addition, the filing includes argument regarding his separate criminal case which we declined to consolidate with this matter. Therefore, we have considered the merits of this filing only to the limited extent it replies to LaMantia's response.

C.    Fees

LaMantia avers that several statutes entitle her to fees on appeal.

Under RAP 18.1(a), this court may grant attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 26.18.160 provides a basis for fees for the "prevailing party" in an action to enforce a maintenance order, without a showing of financial need. However, it specifies a party "may not be considered a prevailing party under this section unless the [opposing party] has acted in bad faith in connection with the proceeding in question." Id. RCW 26.09.260(13) provides a similar potential basis for fees in family law cases, namely, "[i]f the court finds that a motion

to modify a prior decree . . . has been brought in bad faith." And RCW 7.21.030(3) provides, "[t]he court may . . . order *a person* found in contempt of court to pay . . . reasonable attorney's fees." (Emphasis added.)

Here, in its order on Smith's motion for reconsideration, the trial court concluded it did *"*not find that Mr. Smith acted in bad faith," but rather, that "[t]he parties had credible disagreements in interpreting the Decree and the commission pay that Mr. Smith received." In its order on LaMantia's motion for contempt, it likewise concluded that "no bad faith has been found." In that order, it also concluded, "[t]he Petitioner [i.e., Smith] has not been found in Contempt.*"*

As a result, the three statutory bases which LaMantia claims to support her claim for fees on appeal do not apply. She is not a prevailing party under RCW 26.18.160, and RCW 26.09.260 does not entitle her to fees because Smith was not found to have acted act in bad faith. And RCW 7.21.030(3) does not entitle LaMantia to fees given that Smith was not found in contempt.

LaMantia next argues she is entitled to fees on appeal pursuant to RCW 26.09.140 because she has a financial need and Smith has the ability to pay.

RCW 26.09.140 provides: "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." In determining whether attorney's fees should be awarded, the needs of the requesting party must be balanced with the other party's ability to pay. Chapman v. Perera, 41 Wn. App. 444, 455, 704 P.2d 1224 (1985). Thus, the party who requests fees on appeal pursuant to RCW 26.09.140 must provide information to show their financial need

9

and the opposing party's ability to pay. <u>In re Marriage of Gillespie</u>, 77 Wn. App. 342, 350, 890 P.2d 1083 (1995). Specifically, in "any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees. . . each party must. . . file a financial affidavit no later than 10 days prior to the date the case is set." RAP 18.1(c).

LaMantia did file an affidavit of financial need. But, we decline to award any fees pursuant to RCW 26.09.140 because she has not adequately shown her need relative to Smith's ability to pay. <u>See</u> <u>In re Domestic P'ship of Walsh</u>, 183 Wn. App. 830, 859, 335 P.3d 984 (2014); <u>In re Marriage of Hoseth</u>, 115 Wn. App. 563, 575, 63 P.3d 164 (2003) (finding that "a party relying on RCW 26.09.140" must make a showing of need and of the other's ability to pay fees). LaMantia's affidavit leaves the entry for Smith's gross monthly income blank, and the only funds it attributes to Smith is $450 in monthly "other income" compared to her own $161 in such "other income."[5]

## III.    CONCLUSION

We affirm and award neither party fees on appeal.

Díaz, J.

WE CONCUR:

Feldman, J.                    Chung, J.

---

[5] Smith's only arguments as to appellate fees appear in his second "supplemental brief", which we do not reach. But even if we did, he fails to provide any authority or justification for fees as required by RAP 10.3(6), and we do not conclude LaMantia presents baseless claims or engaged in bad-faith litigation tactics.