[Nos. 11902-5-III; 12165-8-III.   Division Three.   May 25, 1993.]

*In the Matter of the Marriage of* M. CAROLYN MATHEWS, *Respondent, and* DONALD C. MATHEWS, *Appellant.*

*Erika Balazs* and *Lukins & Annis P.S.*, for appellant.

*Jeff A. Morris, Todd R. Startzel,* and *Powell & Morris P.S.*, for respondent.

THOMPSON, J. — Donald C. Mathews appeals a decree of dissolution, assigning error to (1) the property division, (2) the maintenance award, and (3) the order that he pay Mrs. Mathews' attorney fees. He also appeals a postdissolution order, challenging the court's (1) finding him in contempt for failing to comply with the decree of dissolution, and (2) ordering him to execute a wage assignment. We affirm in part and reverse in part.

M. Carolyn and Donald Mathews were married on May 2, 1964. During the marriage, Mrs. Mathews worked as a homemaker and cared for the couple's four children. Mr. Mathews worked as a Spokane Valley firefighter. He was also involved in a number of moonlight business ventures which supplemented the family's income.

At the time of the couple's separation on July 1, 1989, Mrs. Mathews, age 47, had minimal employment skills and work experience. She worked part time as a church bookkeeper-secretary earning $455 per month. Her retirement account was valued at $810. Mrs. Mathews suffered from a peptic ulcer, disabling migraines and stress, and was under the care of a clinical social worker. Mr. Mathews, age 48, earned a net monthly income of $2,800 as a firefighter. His retirement account after 23 years of service was valued at

$73,564 as of the date of the separation. The couple's four children are emancipated.

Following a 4-day trial, the court found that during the course of the marriage, Mr. Mathews evidenced an ability "to earn income from activities separate and apart from the fire department income . . .". The court found Mrs. Mathews' resources were minimal and, in order to raise a family, she had sacrificed her ability to be employed. The testimony of Mrs. Mathews' two doctors and her counselor raised a "question as to whether or not she will ever be able to handle full-time gainful employment".

The court valued the family residence, held as community property, at $95,000. The residence was subject to a mortgage balance of $23,500, repair costs of $4,059, and selling costs of $9,500.[1] The court awarded Mrs. Mathews the net value of the residence, $57,941, but imposed a $15,000 non-interest-bearing judgment lien on the residence in favor of Mr. Mathews. Mrs. Mathews was also awarded, through a qualified domestic relations order (QDRO), a one-half interest in Mr. Mathews' retirement account valued as of the date of the separation.[2] The couple's personal community assets

---

[1] The court ordered that the family residence be placed on the market for sale in September 1992, after the couple's two children living at the home had completed their college studies.

[2] The decree states:

"If Donald C. Mathews (the obligor) receives periodic retirement payments as defined in RCW 41.50.500, the department of retirement systems shall pay to M. Carolyn Mathews (the obligee) *(N.A.)* dollars from such payments or fifty percent (50%) of such payments. If obligor's debt is expressed as a percentage of his or her periodic retirement payment and the obligee does not have a survivorship interest in the obligor's benefit, the amount received by the obligee shall be the percentage of the periodic retirement payment that the obligor would have received had he or she selected a standard allowance.

"If Donald C. Mathews (the obligor) requests or has requested a withdrawal of accumulated contributions as defined in RCW 41.50.500, or becomes eligible for a lump sum death benefit, the department of retirement systems shall pay to M. Carolyn Mathews (the obligee) $36,782 plus interest at the rate paid by the department of retirement systems on member contributions. Such interest to accrue from the date of this order's entry with the court of record." The foregoing constitutes a QDRO pursuant to the Internal Revenue Code, 26 U.S.C. § 401(a)-(13)(b).

were valued at approximately $29,000. The court awarded Mrs. Mathews $13,650 of these assets and separate property valued at $750.

Mr. Mathews was awarded his separate property valued at $2,200, a one-half interest in his retirement account as of the date of the couple's separation, a $15,000 lien on the residence, $5,000 worth of equipment used in a construction company he had operated while married, and other community assets valued at about $10,000. Mr. Mathews was ordered to pay the real estate taxes on the family residence, Mrs. Mathews' health insurance premiums for 3 years, and her tuition for 6 quarters of schooling so that she could obtain training as a medical secretary. A judgment was entered against Mr. Mathews for Mrs. Mathews' attorney fees in the amount of $16,500. Mr. Mathews was ordered to pay a $2,000 debt of the construction company.

The court awarded Mrs. Mathews $1,400 per month maintenance, payable until her death, remarriage, or upon her obtaining full-time, gainful employment. The court's finding, in part, reads:

> Should wife's physical and mental health conditions allow her to be full-time gainfully employed and should she demonstrate a substantial and reasonable capacity to earn, for a reasonable period of time, an income substantially and reasonably commensurate with spousal maintenance ordered here, then, and in that event, spousal maintenance herein may be modified and/or terminated.

The maintenance award was to be reduced, dollar for dollar, by any Social Security benefits Mrs. Mathews received in the future. A decree of dissolution was entered; Mr. Mathews appealed.

While the appeal was pending, Mrs. Mathews filed a motion to show cause regarding contempt for Mr. Mathews' failure to (1) pay spousal maintenance (arrearages equaled $3,575); (2) pay real property taxes due on the family home (amount due $2,472.34); (3) pay Mrs. Mathews' health insurance premiums; and (4) remove certain items of personal property from the family home. Mr. Mathews argued that he did not have

the financial ability to pay Mrs. Mathews. The court concluded that Mr. Mathews had willfully violated the decree and held him in contempt. Judgment was entered against Mr. Mathews. The court ordered him to execute a wage assignment directing the Spokane Valley Fire Department to automatically withhold funds sufficient to meet his maintenance obligation. Mr. Mathews' appeal of the court's postdissolution order was consolidated with his appeal of the dissolution decree.

First, Mr. Mathews contends the property division was not fair and equitable. He argues that Mrs. Mathews was awarded a disproportionate share of the assets and that she was repeatedly favored in the court's valuation of the assets.

In dividing property in a dissolution proceeding, the

court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse with whom the children reside the majority of the time.

RCW 26.09.080.

The paramount concern is the economic condition in which the decree will leave the parties. *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990). The parties' relative health, age, education and employability are also considered. *In re Marriage of Dessauer*, 97 Wn.2d 831, 839, 650 P.2d 1099 (1982). "The key to an equitable distribution of property is not mathematical preciseness, but fairness." *In re Marriage of Clark*, 13 Wn. App. 805, 810, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975). A trial court has broad discretion in its division of property. *Baker v. Baker*, 80 Wn.2d 736, 747, 498 P.2d 315 (1972).

■ Here, the trial court considered the statutory factors delineated in RCW 26.09.080 and rendered a decision. The court analyzed the respective economic positions the parties will be left in after the dissolution. The economic realities favored Mr. Mathews who had 23 years of service as a firefighter. On the other hand, as a result of the couple's decision that Mrs. Mathews stay home and care for the four children, Mrs. Mathews has minimal earning capacity and minimal skills. These findings are supported by substantial evidence and will not be disturbed on appeal. *In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990). We find no abuse of discretion in the court's division of the Mathewses' property.

■ We are not persuaded by Mr. Mathews' argument that the court undervalued assets awarded to Mrs. Mathews and overvalued assets he was awarded. While the court may have assigned values to property different from those suggested by Mr. Mathews, the court's valuation of the items was within the scope of the evidence and will not be disturbed. *In re Marriage of Soriano*, 31 Wn. App. 432, 435, 643 P.2d 450 (1982). For example, Mr. Mathews valued the family residence awarded to Mrs. Mathews at $110,000. But the court was free to accept the $95,000 value set by the professional appraiser.

Second, Mr. Mathews contends the amount and indefinite duration of the maintenance award was an abuse of discretion. He argues that as a firefighter earning $2,800 per month, he does not have the financial ability to pay $1,400 per month maintenance, and pay Mrs. Mathews' health insurance premiums and her school tuition.

■ RCW 26.09.090(1) provides the court may grant a maintenance order for either spouse, in an amount and for a period of time the court deems just, after considering all relevant factors, including:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance.

An award of maintenance is within the trial court's discretion. *In re Marriage of Vander Veen*, 62 Wn. App. 861, 867, 815 P.2d 843 (1991).

We reverse the trial court's maintenance award to Mrs. Mathews because it does not evidence a fair consideration of the statutory factors and therefore constitutes an abuse of discretion. Mr. Mathews' net monthly income from his job as a firefighter is approximately $2,800. The trial court's maintenance award and its order that Mr. Mathews pay Mrs. Mathews' medical insurance premiums and education expenses for a period of several years presently leaves him with about $1,000 a month, and Mrs. Mathews with $1,855 per month. His personal property is not significant.

The trial court cited testimony that Mr. Mathews had moonlighted in the past, drawing an inference that he would continue to do so. But there was no evidence proving he was currently earning income apart from his firefighter salary. The court order does not provide for a reduction in maintenance after Mr. Mathews retires, when he will have even less income available. Thus, it appears Mr. Mathews does not have the "ability . . . to meet his needs and financial obligations . . .", RCW 26.09.090(1)(f), while meeting the obligations imposed by the trial court.

RCW 26.09.090(1)(a) also requires the court to consider "[t]he financial resources of the party seeking maintenance, including separate or community property apportioned to [her], and [her] ability to meet [her] needs independently . . .". The trial court awarded Mrs. Mathews most of the equity in the family home, and ordered the home sold in 1992. She

therefore has that money available to her and income from her part-time job to help meet her needs. When this amount is added to the amounts Mr. Mathews has been ordered to pay, Mrs. Mathews has over $800 a month in excess of the available income remaining to Mr. Mathews.

■ The trial court's order that maintenance should continue for an indefinite time is based on the duration of the marriage and evidence of Mrs. Mathews' poor health. Our courts have approved awards of lifetime maintenance in a reasonable amount when it is clear the party seeking maintenance will not be able to contribute significantly to his or her own livelihood. *See In re Marriage of Sheffer*, 60 Wn. App. 51, 56-58, 802 P.2d 817 (1990); *In re Marriage of Bulicek*, 59 Wn. App. 630, 633-34, 800 P.2d 394 (1990); *In re Marriage of Morrow*, 53 Wn. App. 579, 770 P.2d 197 (1989). Here, the dissent relies on the trial court's finding that Mrs. Mathews "has suffered substantial health problems . . . which disable her; and substantial stress, which also disables her at the present time". But the court did not find Mrs. Mathews' health problems prevented her working. Indeed, the court's order that Mr. Mathews pay tuition for Mrs. Mathews' retraining conflicts with such a finding.

Mrs. Mathews argues the maintenance award reflects the trial court's consideration of the "facts" that Mr. Mathews (1) dissipated community assets by dismantling his construction company prior to the divorce, and (2) concealed community assets earned as a result of his "interest" in a restaurant. While the court may order maintenance to compensate a spouse when such allegations are proved, *In re Marriage of Morrow, supra* at 584, the record here fails in this proof.

■ Finally, in determining a reasonable amount of maintenance, the court overlooked the effect of Mr. Mathews' disability or retirement when it ordered maintenance of one-half his current monthly income for an indefinite period. In the event of his disability or retirement, that stream of income is terminated; disability or retirement benefits replace it. But the QDRO operates to transfer to Mrs. Mathews one-half of

his retirement (or disability) income. The effect of the indefinite maintenance order is to require Mr. Mathews to pay maintenance out of his remaining retirement or disability income. This is not only an abuse of discretion, it is clear error.

Accordingly, we remand to the trial court with directions it. consider maintenance in light of the factors set forth above.

Third, Mr. Mathews asserts the court abused its discretion when it ordered him to pay Mrs. Mathews' attorney fees in the dissolution and the postdissolution proceedings.

■ After considering the financial resources of both parties, a court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending a proceeding for marital dissolution and for reasonable attorney fees. RCW 26.09.140. An award of attorney fees rests within the sound discretion of the trial court, which must balance the needs of the spouse requesting the fees with the ability of the other spouse to pay. *In re Marriage of Greenlee*, 65 Wn. App. 703, 707, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002 (1992).

■ Here, the trial court's division of property and award of spousal maintenance reduced not only Mrs. Mathews' need for an award of attorney fees, but also Mr. Mathews' ability to pay. Moreover, the award of fees completely offsets the $15,000 judgment lien granted to him as part of the property division. The lien was necessary to equalize, to the extent possible, the property division. We are not persuaded by Mrs. Mathews' argument that she incurred the attorney fees as a result of her husband's intransigence, making the financial resources of the spouse seeking fees irrelevant. *Morrow*, at 591. Mrs. Mathews' argument ignores that Mr. Mathews was ordered to pay attorney fees following various pretrial hearings necessitated by his intransigence. Any portion of the attorney fees awarded for intransigence that are unpaid remain Mr. Mathews' obligation. However, any additional attorney fee awarded is reversed. On remand, the court will reconsider this issue.

Fourth, Mr. Mathews challenges the contempt citation. A court in a dissolution proceeding has the authority to enforce its decree in a contempt proceeding. *Stablein v. Stablein*, 59 Wn.2d 465, 466, 368 P.2d 174 (1962); *Decker v. Decker*, 52 Wn.2d 456, 465, 326 P.2d 332 (1958); *Berry v. Berry*, 50 Wn.2d 158, 162, 310 P.2d 223 (1957); *In re Marriage of Peacock*, 54 Wn. App. 12, 17, 771 P.2d 767 (1989). Punishment for contempt of court is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Schuster v. Schuster*, 90 Wn.2d 626, 630, 585 P.2d 130 (1978); *Seventh Elect Church v. Rogers*, 34 Wn. App. 105, 117, 660 P.2d 280, *review denied*, 99 Wn.2d 1019 (1983).

Here, Mr. Mathews had a duty to do something other than ignore the trial court's orders as contained in the dissolution decree. There are provisions for stays pending appeal. RAP 8.1. But Mr. Mathews did not attempt to secure such a stay. In these circumstances, we cannot say the contempt order constituted an abuse of discretion.

Finally, Mr. Mathews argues that the court erred in ordering an assignment of his wages to Mrs. Mathews.

A court may order a party to perform an act to effectuate the court's resolution of a dispute. *Peacock*, at 17. RCW 7.21.010 *et seq.*, which governs civil contempt proceedings, provides that the court may impose remedial sanctions including "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c). Coercive sanctions imposed for contempt are within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Yamaha Motor Corp. v. Harris*, 29 Wn. App. 859, 866, 631 P.2d 423, *review denied*, 96 Wn.2d 1013 (1981).

Here, the court's order to Mr. Mathews to execute a wage assignment was designed to ensure compliance with the decree which Mr. Mathews had violated. The court acted within its discretion in ordering Mr. Mathews to execute a wage assignment. RCW 7.21.030(2)(c). There is no error.[3]

---

[3]Of course, the amount of the wages assigned will be affected by any reduction of the maintenance award on remand.

In summary, the trial court's division of property and its orders in the postdissolution proceeding are affirmed. The maintenance and attorney fees awards are reversed. We remand the cause for further proceedings on these issues. Each party is responsible for his or her own fees and costs on appeal.

SHIELDS, C.J., concurs.

SWEENEY, J. (dissenting) — The trial court's award of spousal maintenance is amply supported by the facts and should not be disturbed on appeal. I therefore dissent. I disagree with the majority's ruling that the trial court's award of indefinite maintenance does not "evidence a fair consideration of the statutory factors and therefore constitutes an abuse of discretion." Majority, at 123. I respectfully submit that the trial judge, whose obligation it was to weigh the evidence, made the award after fair consideration of those statutory factors. A trial court abuses its discretion only if it makes a manifestly unreasonable decision or if it exercises discretion on untenable grounds or for untenable reasons. *In re Marriage of Sheffer*, 60 Wn. App. 51, 53, 802 P.2d 817 (1990).

### TRIAL TESTIMONY AND FINDINGS OF FACT

Carolyn Mathews was 19 years of age when she married Don Mathews in 1964. She had no formal education beyond high school. The parties established a traditional family relationship: Mr. Mathews was the family's primary wage earner, Mrs. Mathews stayed home and cared for the couple's four children. The evidence supports and the court found that Mrs. Mathews had sacrificed her ability to "go out and become employed . . ." in the interests of her family. Finding of fact 7.

At the time of separation, Mrs. Mathews suffered from a stomach ulcer and incapacitating migraine headaches. Dr. David Gilman, Mrs. Mathews' family physician for 9 years, testified that she suffered a severe neck injury in 1969 and as a result had lost about 30 to 40 percent of her regular neck motion; she is also predisposed to premature arthritis.

Because of the frequency of her debilitating migraines, he did not think she was "very employable".

Sandi Neils, a clinical social worker, began treating Mrs. Mathews in February 1990. She testified that Mrs. Mathews has a "continuous pattern of dependent and submissive behavior". When asked at trial whether Mrs. Mathews was likely to be employable full time, Ms. Neils stated, "there's no certainty that she can manage full-time employment. . . . She has not had the experience of — of doing that . . . I think working part time two days a week is — is really all that she could handle." Report of Proceedings, at 179.

Dr. Jack Dutzar, a board certified family practitioner, treated Mrs. Mathews between 1985 and 1989. He testified that she suffered from "a serious and ongoing problem with inflammation of her stomach and stomach lining . . .". Report of Proceedings, at 143. In his opinion, her ulcer and migraine problems were permanent conditions which would make it "very difficult for her to . . . have been employed on a full-time basis, if at all." Report of Proceedings, at 147. Dr. Dutzar stated that Mrs. Mathews' prognosis for recurring problems is "almost a certainty".

Based on this testimony, I believe the trial court appropriately found that Mrs. Mathews has "suffered substantial health problems for a number of years . . . which disable her . . . at the present time" and that Mrs. Mathews' doctors and her mental health counselor "all question whether she will ever be able to become employed on a full time basis". The trial court went on to observe that

[w]hile the doctors hope she eventually will be able to be gainfully employed full-time, and while [Mrs. Mathews] has the same hopes, the problem of the stress of a full-time job, as opposed to those presented by a part-time job, leaves a real question as to whether or not she will ever be able to handle full-time gainful employment.

The court found Mr. Mathews to be in relatively good health.

The court described Mrs. Mathews' $455 per month income as "nothing . . . of great consequence . . .". Mrs. Mathews has a

"very minimal" amount of retirement, "limited economic circumstances, particularly as opposed to husband" and has no health or life insurance. In contrast, the court found Mr. Mathews, age 48, to have 23 years' experience as a firefighter and a net monthly income of $2,800. Mr. Mathews' retirement account was valued at $73,564. He is eligible to retire at age 50 and receive a full pension. The court found that Mr. Mathews intended to continue his employment with the fire department.

The 4-day trial was largely devoted to the unraveling of Mr. Mathews' business endeavors. Although the court could not identify what, if any, business interest Mr. Mathews had in the Hungry Farmer Restaurant, it found that Mr. Mathews was a bartender, that he had a manager's position in the restaurant, and that his name appeared on the restaurant's incorporation papers. It found that

> there is some clear indication that [Mr. Mathews] was cooperating with [the owner] in making hiring decisions, firing decisions, acting as a host, and handling the money. This and other factors indicate a concerted effort on the part of [Mr. Mathews] . . . to keep from the light of day any interest which [Mr. Mathews] may potentially have in the Hungry Farmer or to hide an ability which he has to earn income during the pendency of this dissolution matter.

The court entered a finding that Mr. Mathews had

> certainly evidenced an ability to be actively involved in another business, for which he has generally been involved in one way or another during most of the years he has been a fire fighter for the Spokane Valley Fire Department.

Further, the court found "[t]here is substantial evidence to clearly show an ability on the part of [Mr. Mathews] to earn income from activities separate and apart from the fire department income . . .".

In finding of fact 7, the court found:

> [A]round the time of the separation or the institution of the marital dissolution proceedings, [Mr. Mathews] threatened [Mrs. Mathews] that "if you are trying to impute to me any income from Matt's Construction Company, as part of this dissolution proceeding, this company (Matt's Construction Company) is going to be dissolved."

The construction business which Mr. Mathews dissolved after the parties separated, pursuant to his threat, had "gross receipts of approximately $110,000 . . .". The trial court further found that Mr. Mathews "admitted there were monies that were not reported over the course of Matt's Construction Company's existence" which provided "the marital community and their family with additional income." Finding of fact 7. Mrs. Mathews testified that "there were certain jobs that [Mr. Mathews] did under the table" and that at any given time he carried approximately $400 to $1,000 cash. Report of Proceedings, at 329. She testified that Mr. Mathews did not account to her for what he did with the cash. Mr. Mathews admitted that since his separation he had paid cash for new furniture, a new television, has taken trips to Reno and Florida, and has paid $1,000 cash to repaint his truck. Report of Proceedings, at 137-38.

I respectfully submit that the majority's conclusion that "there was no evidence proving [Mr. Mathews] was currently earning income apart from his firefighter salary" ignores the trial record and rewards Mr. Mathews' decision to spitefully dissolve a profitable business pending a decree of dissolution. Majority, at 123. This court should not substitute its judgment for that of the trial court by refusing to impute additional income to Mr. Mathews. *In re Marriage of Vander Veen*, 62 Wn. App. 861, 865, 867, 815 P.2d 843 (1991); *In re Marriage of Nicholson*, 17 Wn. App. 110, 117, 561 P.2d 1116 (1977). The majority's finding that Mr. Mathews does not have the ability to meet his needs and financial obligations (majority, at 123) is not supported by the trial record; the trial court's finding that he does have that ability is.

## CONSIDERATION OF STATUTORY FACTORS

The trial judge heard and assessed the credibility of both parties. It found:

> The substantial credible evidence here is in favor of [Mrs. Mathews]; time after time [Mr. Mathews] has been impeached as a witness; and that [Mr. Mathews'] credibility has been substantially damaged. [Mr. Mathews'] answers to questions

were evasive, and his testimony, after all things were considered, simply was not credible.

In awarding Mrs. Mathews $1,400 maintenance (payable until her death, remarriage or upon her obtaining full-time, gainful employment), the court specifically referenced the statutory factors:

> *The Court has considered the factors set forth in fixing maintenance as enunciated in RCW 26.09.090* and other relevant factors. *The financial resources of [Mrs. Mathews] at this time are just really minimal.* The ability to meet her needs independently is very limited. There will be some time necessary for her to acquire the training which she hopes to obtain in the way of medical secretary work, which according to the vocational counsellor will hopefully be within two years. This may be something, however, that she just cannot really easily accomplish in two years; and because of her condition of health, she may need more time. The parties have established a good standard of living, which should be something that is continued as far as each is concerned. [Mrs. Mathews] is just as much entitled to a continuation of that standard of living as is [Mr. Mathews]. *The court has considered the duration of this marriage.* [Mrs. Mathews] has devoted herself to basically taking care of the home and maintaining the family, while [Mr. Mathews] has been busy in his own occupation and developing outside business interests. *The court has considered [Mrs. Mathews'] age, her physical and emotional condition, as well as her financial obligations and economic circumstances, along with the ability of [Mr. Mathews] to meet [Mrs. Mathews'] needs and to meet his own needs.*

(Italics mine.) It then ordered that:

> Should [Mrs. Mathews'] physical and mental health conditions allow her to be full-time gainfully employed and should she demonstrate a substantial and reasonable capacity to earn, for a reasonable period of time, an income substantially and reasonably commensurate with spousal maintenance ordered herein, then, and in that event, spousal maintenance herein *may be modified and/or terminated.*

(Italics mine.)

An award of maintenance is within the trial court's discretion. *Vander Veen*, at 867. The trial court is to reach a fair and just result after considering all relevant factors, including the financial resources of each party, the age, physical and

emotional condition and financial obligations of the spouse seeking maintenance, the duration of the marriage and the couple's standard of living during the marriage. RCW 26.09-.090.

The court considered the respective postdissolution economic positions of the parties. The economic realities favored Mr. Mathews who had 23 years of service as a firefighter and who had demonstrated, through business ventures such as Matt's Construction, Matt's Mobile Home Service and Matt's Auctioneering, an ability to earn income in addition to his work with the fire department. On the other hand, as a result of the couple's decision that Mrs. Mathews stay home and care for the four children, Mrs. Mathews has minimal earning capacity and minimal employable skills.

Two expert medical opinions and the testimony of Mrs. Mathews' mental health counselor supported the court's conclusion that Mrs. Mathews is presently unable to, and may never be able to, work full time. Findings of fact supported by substantial evidence should not be disturbed on appeal. *In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807, *review denied*, 115 Wn.2d 1013 (1990). Considering the relative postdissolution economic positions of the parties and the statutory factors in RCW 26.09.090, the trial court did not abuse its discretion in awarding Mrs. Mathews $1,400 per month maintenance, payable until her death, remarriage or upon her obtaining full-time, gainful employment.

The courts of this state have recognized the economic realities imposed by a long-term, traditional husband and wife relationship — wife at home raising children, husband in the workplace. *In re Marriage of Sheffer*, 60 Wn. App. 51, 57, 802 P.2d 817 (1990). By caring for a home and family, a stay-at-home wife and mother forfeits her own economic opportunities. Should a dissolution occur, a woman then lacks the marketable skills necessary to enter the workplace and earn a living to maintain the standard of living she had during the marriage. As noted in *Sheffer*, at 57,

[t]hrough her efforts, [the wife] provided the services needed by the community to function as a family. She did so at a sacrifice of her economic opportunities in the marketplace. That trade-off, clearly agreed to by [the husband], now leaves [the wife] economically disadvantaged as compared to [the husband].

The adverse economic consequences of marital dissolutions on women are a "significant national and statewide concern". Washington State Task Force on Gender & Justice in the Courts, *Final Report* 49 (1989). In recent years, 25 percent of white women and 55 percent of black women in the United States have fallen below the poverty line after their marriage has ended. Gender and Justice Task Force, at 49. Interestingly, the task force reported that "divorced men experience an improvement in their standard of living . . .".[4] Task Force, at 53.

Maintenance awards may be utilized to equalize the post-dissolution standard of living of the parties, especially when the marriage is long term and the superior earning capacity of one spouse is one of the few assets of the community. *Sheffer*, at 57. The trial court here recognized a disparity in the couple's earning potential and awarded Mrs. Mathews indefinite maintenance to equalize this economic disparity. A trial court's decision will be affirmed unless no reasonable judge would have reached the same result. *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).

To repeat my concern with the majority's holding:

[T]rial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality. . . .

---

[4]The task force reported the results of a California study which indicated that approximately 1 year after legal divorce, men experienced a 42 percent increase in their standard of living while divorced women experienced a 73 percent decline in their standard of living. An Alaska study, cited in the task force report, indicated that divorced women and children in Alaska experienced a 33 percent decline in per capita income while divorced men experienced a 17 percent rise in their per capita incomes. Task Force, at 53.

134

. . . [If the] trial court carefully analyzed the respective positions of the parties, exercised its discretion and rendered a thoughtful decision. . . . [t]hat ends the matter.

*Landry*, at 809-10. I would affirm the award of maintenance.

Review denied at 122 Wn.2d 1021 (1993).