IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 39339-9-III |
| | ) | |
| TIMOTHY L. WALTERS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| PATRICE R. WALTERS, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — This appeal and cross appeal challenge the trial court's division of property and award of spousal maintenance. We affirm, but remand for the trial court to make a small correction to its maintenance award.

## FACTS

In November 2020, Timothy Walters filed a petition for dissolution of his 29-year marriage to Patrice Walters. After trial, the court awarded 50 percent of the community estate to each spouse, along with their separate property. Ms. Walters' separate property consisted of a kayak and bedroom furniture. Mr. Walters' separate property consisted solely of a 45.1 percent interest in his Washington State Patrol (WSP) pension. The

court's ruling acknowledged the parties' monthly Social Security benefits—$1,406 for

Mr. Walters and $1,126 for Ms. Walters—but did not allocate those benefits. At the time

of divorce, no children remained in the Walters' home.

In addition to the above awards, the trial court ordered Mr. Walters to pay Ms.

Walters $1,250 per month in spousal maintenance as a means of equalizing the parties'

postdissolution incomes. Citing the parties' ages and the duration of their marriage, the

court ordered maintenance payments to continue for life. The court considered awarding

Ms. Walters the full community share of Mr. Walters' WSP pension in lieu of

maintenance, but decided not to.

The court's dissolution order expressly considered every mandatory factor

enumerated in RCW 26.09.080 and RCW 26.09.090.

*Contested assets*

The trial court distributed much of the Walters' estate without objection from the

parties. However, the court's characterization of several assets draws scrutiny on appeal:

- Family residence: The Walters sold their home prior to trial with net

  proceeds of $462,337.20. Each spouse claimed a $100,000.00 advance

  from those proceeds. After satisfying other debts, $214,656.00 remained to

  be distributed. The trial court's oral ruling mischaracterized this

$214,656.00 as the total proceeds from the sale itself, rather than the undistributed remainder. However, the court's final ruling corrected this misstatement. The court awarded each spouse $107,328.00 as their final share from the sale of the home.

- Vehicles: The trial court valued the Walters' Ford pickup at $6,000 and Subaru Outback at $7,000. It awarded the pickup to Mr. Walters and the Outback to Ms. Walters. Because the pickup was too old to command trade-in value, Mr. Walters proposed using its low retail value. For the Outback, Mr. Walters proposed using its clean trade-in value. Ms. Walters proposed using average retail for the pickup and average trade-in for the Outback. The court's valuations split the difference between these requests.

- Boat: The trial court valued the Walters' boat at $15,000 and awarded it to Mr. Walters. Fifteen thousand dollars was higher than the $13,845 low retail value Mr. Walters proposed and lower than the boat's $15,695 average retail value. Ms. Walters valued the boat at $19,119. However, Ms. Walters' valuation reflected the book value for a more expensive boat than the model the couple owned. Noting this error, the court did not factor Ms. Walters' valuation into its own appraisal. Instead, the court's $15,000

valuation balanced the boat's age and usage against improvements the
Walters had made to the boat.

- All-terrain vehicle (ATV): Prior to trial, Mr. Walters sold the couple's
ATV for $2,800. Because Ms. Walters believed the vehicle was worth
$4,000, Mr. Walters gave her $2,000 of the proceeds and kept only $800 for
himself. The trial court's oral ruling incorrectly stated that Ms. Walters
herself had sold the ATV for $4,000, rather than stating Mr. Walters had
sold it for $2,800. In that ruling, the court valued the ATV at $4,000 and
charged each party with $2,000 in proceeds from the sale.

    While the trial court's final ruling did not correct any misstatements
concerning the ATV, the court's denial of reconsideration stated accurately
that Mr. Walters had sold the vehicle for $2,800. Nevertheless, the court
defended its $4,000 valuation and $2,000 credits to each party. It argued
$4,000 represented a compromise between the value Ms. Walters sought[1]

---

[1] The ruling stated that "Ms. Walters testified that the [ATV] was valued in excess of $4,000." Clerk's Papers (CP) at 193. Ms. Walters' response to Mr. Walters' motion for reconsideration echoes this assertion, stating that Ms. Walters proposed a value for the ATV that was "well in excess of $4,000." CP at 156. However, both Ms. Walters' testimony at trial and the parties' joint trial management report indicate Ms. Walters only valued the ATV at or near $4,000, and not "in excess" of that figure.

4

and the vehicle's $3,555 low retail value. The court furthermore argued its $2,000 credits were fair in light of Mr. Walters' decision to sell the ATV at below market value. The court's $4,000 valuation also split the difference between the vehicle's low retail and average retail values.

- WSP pension: The Washington Department of Retirement Systems (DRS) offered a time-rule calculation determining 45.1 percent of Mr. Walters' WSP pension was his separate property, whereas 54.9 percent was communal. Ms. Walters objected to this division, arguing the court should characterize the entire pension as community property because Mr. Walters' highest-earning years at WSP—from which pension payments are calculated—occurred during the marriage. The court disagreed and adopted the DRS calculation. Despite this decision, the trial court's oral ruling overstated Mr. Walters' separate share of the pension as 49.1 percent. As a result, the oral ruling inflated Mr. Walters' postdissolution income by $236 per month.[2] In turn, this error skewed the trial court's maintenance award.

---

[2] Mr. Walters' correct postdissolution income was $4,764 per month: $1,406 (Social Security benefits) + $1,270 (half of community share of pension) + $2,088 (separate share of pension). The trial court's oral ruling determined Mr. Walters' income was $4,944 per month, which it rounded to $5,000.

Because Ms. Walters' postdissolution earnings were $2,396 per month,[3] the court concluded $1,250 per month was necessary to equalize the parties' incomes. In fact, $1,184 would have achieved this goal. The court's final ruling did not correct these calculations.

- Separate property contribution: Although 45.1 percent of Mr. Walters' WSP pension was his separate property, he contributed this portion of the pension to the community from 2005 to 2022. As a result, over $330,000 of Mr. Walters' separate property merged with the community estate.

*Earning potential*

At the time of divorce, Mr. Walters was 66 years old and retired. Before retiring, he had served as Chief of Police at Eastern Washington University and had conducted active shooter trainings through his Training for Survival, LLC. As of 2020, Mr. Walters' LLC was defunct.

Ms. Walters at the time of divorce also was of retirement age. For most of the Walters' marriage, she had worked as a homemaker. Toward the end of their marriage, Ms. Walters had occasionally accepted part-time or seasonal employment. However,

---

[3] $1,126 (Social Security benefit) + $1,270 (half of community share of pension) = $2,396.

6

since 2008, Ms. Walters had suffered from multiple sclerosis (MS). She testified that this condition caused pain and numbness in her hands. As a result, she believed it was "not practical or reasonable for [her] to work." Rep. of Proc. (RP) at 114.

While Mr. Walters conceded Ms. Walters' MS diagnosis, he argued the condition did not prevent her from working. In support of this assertion, Mr. Walters cited the part-time and seasonal jobs Ms. Walters had accepted in recent years. He also cited a Facebook post wherein Ms. Walters purportedly claimed to have been healed. Ms. Walters admitted in testimony that she was healthy enough to kayak and take vacations.

In its oral ruling, the trial court concluded Ms. Walters' health prevented her from supplementing her income through employment. Conversely, the court found Mr. Walters could supplement his income by conducting active shooter trainings.

*Procedural history*

Mr. Walters moved for reconsideration, challenging the trial court's valuation of several assets and calculation of spousal maintenance. He argued the latter impermissibly invaded his separate property and Social Security benefits. In her own motion for reconsideration, Ms. Walters asked the court to award her a greater share of the WSP pension in lieu of spousal maintenance. She argued this arrangement would be more

7

equitable because it would provide her with cost-of-living adjustments and because it would alleviate the need for ongoing contact with Mr. Walters.

The trial court denied both motions. In its denial, the court noted that receiving maintenance payments did not require Ms. Walters to disclose her physical address to Mr. Walters, as she could receive her payments via direct deposit or at a post office box.

Mr. Walters timely appeals the trial court's dissolution order and denial of reconsideration. Ms. Walters cross appeals these same orders.

ANALYSIS

A.    DIVISION OF PROPERTY

Mr. Walters argues the trial court's division of property erred by (1) mischaracterizing his separate property, (2) relying on erroneous asset valuations, and (3) incorporating faulty calculations. Ms. Walters argues the court erred by characterizing too much of their estate as Mr. Walters' separate property and by not awarding one-half of his pension to her, as equity demanded.

*Standard of review*

We review a trial court's division of marital property for abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court operates within its discretion when its findings derive from the factual record, its

8

conclusions apply sound law, and its decisions are not manifestly unreasonable. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885 (2012). A decision is manifestly unreasonable when it lies "'outside the range of acceptable choices.'" *Id.* at 586 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

*Breadth of discretion*

Under RCW 26.09.080, a trial court must divide marital property in a manner that "appear[s] just and equitable after considering all relevant factors." Factors the court must consider include: (1) the nature and extent of community property, (2) the nature and extent of separate property, (3) the duration of the marriage, and (4) the parties' relative economic circumstances. RCW 26.09.080(1)-(4).

A correct division of property may or may not result in equal shares but must result in fairness. *See In re Marriage of Nicholson*, 17 Wn. App. 110, 118, 561 P.2d 1116 (1977). A division is fair when it is the product of "'wise and sound discretion'" rather than "'set or inflexible rules.'" *Id.* (quoting *In re Marriage of Clark*, 13 Wn. App. 805, 810, 538 P.2d 145 (1975)). While the separate or communal character of marital property is one factor the trial court must consider, it is not controlling. *In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985). Instead, "all property is brought before the court for a 'just and equitable' distribution." *In re Marriage of Farmer*, 172 Wn.2d 616,

9

625, 259 P.3d 256 (2011).

One exception to the *Farmer* rule is Social Security benefits, which under

42 U.S.C. § 407(a) are inalienable by the recipient. *In re Marriage of Tupper*, 15 Wn.

App. 2d 796, 801, 478 P.3d 1132 (2020). While a trial court may consider Social

Security benefits when assessing the parties' relative economic circumstances, it may not

"calculate a specific formal valuation" of Social Security benefits and award "a precise

property offset based on that valuation." *In re Marriage of Zahm*, 138 Wn.2d 213, 222,

978 P.2d 498 (1999).

Within this framework, the court below was empowered to distribute the Walters'

marital assets in any manner, provided it (1) considered all relevant factors under

RCW 26.09.080 and (2) did not divide the parties' Social Security benefits. Additionally,

the court's factual findings required support from the record, its conclusions needed to

rest on sound law, and its decisions could not be manifestly unreasonable. *Bowen*, 168

Wn. App. at 586-87.

### *i. Consideration of relevant factors*

The trial court expressly considered every RCW 26.09.080 factor when it divided

the Walters' marital assets.

The court considered the "nature and extent of community property" when it admitted exhibits tabulating the Walters' community assets and debt. RCW 26.09.080(1). The court heard testimony from the parties concerning the value of their assets. In its findings of fact, the court delineated each community asset and assigned a value to it. The court's final opinion embraced the communal nature of this property by apportioning it evenly between the Walters.

The trial court considered the "nature and extent of separate property" when it carved out Ms. Walters' kayak and bedroom furniture as separate property acquired by gift and before marriage, respectively. RCW 26.09.080(2). Likewise, the court used DRS's line-rule calculation to carve out 45.1 percent of Mr. Walters' WSP pension as his separate property acquired before marriage. Mr. Walters correctly alleges the court in its oral ruling misstated his interest as 49.1 percent, but the court corrected this error in its findings of fact and final ruling.

As to both parties' separate property, the trial court excluded these assets from its calculation of community property while noting the disparity they created between the parties' respective financial outlooks. The court also noted Mr. Walters' contribution to the community of over $330,000 in separate-property pension payments between 2005 and 2022. Because these contributions flowed into the community, they became

community property; the court did not allocate them to Mr. Walters. Nevertheless, the attention the court paid to the disposition of those funds evinces its thorough consideration of the Walters' separate assets.

The trial court considered the duration of the Walters' marriage when it recited the three-decade history of that marriage during its oral ruling, taking care to acknowledge the agreements, expectations, and contributions that accrued over that time. RCW 26.09.080(3). The court also weighed the duration of the Walters' marriage when it awarded spousal maintenance on the grounds that "this is a 29-plus-year marriage involving retired folks." RP at 230.

Finally, the trial court considered the parties' relative economic circumstances as a result of the divorce. RCW 26.09.080(4). Specifically, the court concluded Mr. Walters' postdissolution income would outstrip Ms. Walters' postdissolution income because of his separate share of the WSP pension and his larger Social Security benefit. Additionally, Mr. Walters could augment his income with active shooter trainings, whereas MS prevented Ms. Walters from earning any supplemental income. Although the court's property disbursement did not itself offset this disparity, the court's findings of fact and award of spousal maintenance indicate it was a consideration.

In sum, RCW 26.09.080 imposes no requirements the trial court did not satisfy.

### ii. Social Security benefits

The trial court properly considered "'the amount of [S]ocial [S]ecurity benefits'"

the Walters received as a means of "'evaluat[ing] the economic circumstances.'" *Zahm*,

138 Wn.2d at 223 (quoting *In re Marriage of Zahm*, 91 Wn. App. 78, 85, 955 P.2d 412

(1998), *aff'd*, 138 Wn.2d 213). The court did not, as *Zahm* forbids, "calculate a specific

formal valuation" of Mr. Walters' Social Security benefit and award "a precise property

offset based on that valuation." *Id.* at 222.

In its oral ruling, the trial court acknowledged Mr. Walters' $1,406 Social Security

benefit and noted it was $300 higher than Ms. Walters' $1,126 benefit. The court's

acknowledgment of these amounts remained squarely within the zone of "consideration"

permitted by *Zahm*. *Id.* at 223. The acknowledgment did not stray into "calculat[ing] a

specific formal valuation" of Mr. Walters' benefit because, plainly, no such valuation

occurred. *Id.* at 222. Valuating Mr. Walters' monthly benefit would have entailed

discounting future payments over the span of Mr. Walter's life expectancy to determine

the present value of his Social Security entitlement now, at dissolution. *See In re*

*Marriage of Rockwell*, 141 Wn. App. 235, 244, 170 P.3d 572 (2007). Subsequently, a

"precise property offset" would have manifested as a lump-sum award to Ms. Walters

effectively extracting the benefit's value from Mr. Walters' share of the estate. *Zahm*, 138 Wn.2d at 222. An examination of the court's property division analysis reveals no calculations like these and no offset like this. Accordingly, the trial court's property division did not divide either party's Social Security benefits.

### iii. Factual record

The trial court's division of the Walters' property rested on findings derived from the factual record. *Bowen*, 168 Wn. App. at 587. Such findings are proper when substantial evidence supports them. *Rockwell*, 141 Wn. App. at 242. Evidence is substantial when it is of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *Id.*

Mr. Walters challenges the trial court's findings on the grounds that they relied on faulty valuations of several assets—namely, the parties' home, vehicles, boat, and ATV. However, as to each of these assets, the value the court assigned derived coherently from the Walters' testimony and exhibits.

The trial court valued the proceeds from the Walters' home, minus sums paid to creditors, at $414,656. Noting each party's $100,000 advance from those proceeds, the court divided the remaining $214,656 equally, awarding $107,328 to each spouse. All of this was consistent with admitted testimony and exhibits. Mr. Walters correctly alleges

the court misstated the amount of home proceeds in its oral ruling, but the findings of fact and final ruling cured those misstatements.

Regarding community vehicles, the trial court valued Mr. Walters' Ford pickup at $6,000 and Ms. Walters' Subaru Outback at $7,000. These values bear a coherent relationship to the valuations each party assigned the vehicles. Mr. Walters challenges these valuations on the grounds that his truck received retail valuation, whereas Ms. Walters' vehicle received trade-in valuation. Because retail values outpace trade-in values, Mr. Walters contends the trial court inflated the value of the asset it charged to him.

However, it was Mr. Walters himself who furnished an appraisal schedule for the pickup that included no trade-in value. Moreover, Mr. Walters testified that the Subaru should receive clean trade-in value. The court considered this evidence when it arrived at the valuations it did. There was no error and, if there was, it was invited. *In re Marriage of Blakely*, 111 Wn. App. 351, 360, 44 P.3d 924 (2002) (a party may not challenge an error he himself set up).

As to the Walters' boat, the trial court used age, usage, and accessories—all in the record—to arrive at a value of $15,000. This figure is higher than low retail for the boat and lower than average retail. Mr. Walters correctly argues Ms. Walters based her

15

$19,119 valuation of the boat on a more expensive model than the one the Walters owned. However, Mr. Walters incorrectly argues the trial court's $15,000 valuation "split the difference" between his $13,845 request and Ms. Walters' misguided $19,119 request. Br. of Appellant at 45. Had the trial court split the difference in this regard, it would have valued the boat at $16,482—a figure nearly 10 percent higher than the value the court actually assigned. Instead, the trial court apparently did exactly what it claimed to have done—it accepted Mr. Walters' low retail value for the boat, in light of its age and usage, but then increased that value incrementally in light of improvements the Walters made to the boat. Ms. Walters' erroneous valuation did not ostensibly influence the trial court's analysis. The court made a reasonable assessment derived from the factual record.

The trial court valued the Walters' ATV at $4,000, which it said was "in the ballpark" of the vehicle's $3,555 low retail value. RP at 224. This valuation is consistent with the valuation Ms. Walters requested from the court. It also represents the price Ms. Walters believed she and her husband should have sought for the ATV when they sold it. Instead of seeking that price, the couple agreed to sell the ATV for $2,800, at which point Mr. Walters would "make up for the difference" to Ms. Walters by paying her $2,000 of the proceeds. RP at 145. In light of this agreement, the court was justified in concluding $4,000 was a good-faith valuation for the ATV. If that valuation had been

16

absurd, Mr. Walters likely would not have offered to make up the difference to his wife.

Moreover, the record indicates average retail value for the ATV was $4,675. For all these

reasons, the record supports the trial court's $4,000 valuation.

Mr. Walters correctly alleges the trial court in its oral ruling misstated certain facts

related to the ATV. Specifically, the court stated that Ms. Walters herself sold the ATV

for $4,000, rather than stating, as it should have, that Mr. Walters sold the vehicle for

$2,800. The court did not correct this misstatement in its final ruling, where it credited

each party with $2,000 in proceeds from the sale of the ATV.

However, the court did correct this misstatement in its denial of reconsideration.

The court in that order also clarified its valuation of the ATV, stating that $4,000

represented a balancing of the vehicle's low retail value—offered in evidence—against

Ms. Walters' own valuation. It is not clear whether such a balancing truly occurred, since

Ms. Walters appears only to have valued the ATV at $4,000, rather than valuing it in

excess of that sum. Even if the trial court simply honored Ms. Walters' $4,000 request,

however, the record—as discussed above—amply supports the reasonableness of that

valuation.

The court's denial of reconsideration also explained the $2,000 credits it allocated

to each party. According to the order, the court credited Ms. Walters with $2,000 because

17

she received that amount and credited Mr. Walters with $2,000 in consideration of his

decision to sell the ATV at below market value. In other words, Mr. Walters received

$2,000 in value because he received $800 in cash along with the $1,200 convenience of

accepting a lowball offer over his wife's objection. The trial court's $4,000 valuation of

the ATV and respective $2,000 credits accordingly find support in the record and were

not in error.

### iv. Sound law

The trial court divided the Walters' property according to sound law. *Bowen*, 168

Wn. App. at 587. Specifically, the court, as discussed above, considered every factor

required by RCW 26.09.080 and fashioned an equitable property distribution within the

broad discretion afforded by that statute. Additionally, the court followed the dictates of

*Zahm* when it considered Social Security benefits without precisely offsetting them.

Mr. Walters argues the trial court misunderstood case law to impose a requirement

that parties from long-term marriages emerge from a divorce in identical financial

positions. We agree no such requirement exists. *In re Marriage of Doneen*, 197 Wn.

App. 941, 950, 391 P.3d 594 (2017) (*Rockwell* does not mandate equal financial positions

following the dissolution of a long-term marriage.). However, nothing in the record

18

indicates the trial court felt constrained in this way.[4]  Instead, the court in its own discretion simply allotted equal shares of the Walters' community estate.  While it is true the court in its spousal maintenance analysis elected to equalize the Walters' incomes postdissolution, nothing indicates the court ordered this maintenance in compliance with any controlling case.  Indeed, neither the court's oral ruling nor its final ruling cites any law at all besides RCW 26.09.080 and RCW 26.09.090.  The court's denial of reconsideration does cite *Zahm*, but only to justify the court's comparison of the parties' Social Security benefits.  138 Wn.2d at 223.

While *Rockwell* and other cases do not require equal financial positions in circumstances like that of the Walters, those cases certainly do not forbid equal division either.  The trial court was empowered to award equal shares and did so.

### v.  Reasonableness

The trial court's division of the Walters' property was not manifestly unreasonable because the court's ruling lay within "'the range of acceptable choices.'"  *Bowen*, 168 Wn. App. at 586 (quoting *Littlefield*, 133 Wn.2d at 47).  The court's principle in dividing

---

[4] The court did state that Ms. Walters was "entitled to an award of spousal maintenance to equalize the economic condition of the parties post-dissolution."  RP at 230.  However, stating that Ms. Walters was "entitled" to such equalization falls short of citing case law requiring it.  Obviously the court believed Ms. Walters was "entitled" to the spousal maintenance it awarded, or else the court would not have awarded it.

the Walters' property was to (1) preserve each party's separate property and Social

Security benefits and (2) award each party one-half of the community estate. Such a

methodology honors the character of all property involved and protects each party's

interest in that property. While such equal division is not mandatory, it is certainly

acceptable.

Ms. Walters disagrees, arguing the trial court erred by not awarding her one-half of

the total WSP pension, as equity demanded. We agree with Ms. Walters that such an

award would have been within the court's power, as "all property is brought before the

court for a 'just and equitable' distribution." *Farmer*, 172 Wn.2d at 625. We also agree

that an increased share of the pension would have better protected Ms. Walters' long-term

security, as a pension offers cost-of-living adjustments whereas maintenance payments do

not. Moreover, the trial court could have ordered such an award without invading Mr.

Walters' separate portion of the pension.[5]

However, equity would merely have permitted such an award and did not require

it. The trial court's broad discretion under RCW 26.09.080 empowered it to divide the

Walters' property in any just and equitable fashion, provided it met the other requirements

---

[5] Ms. Walters could have taken 91 percent of the community share of the pension—equaling 50 percent of the total pension—leaving Mr. Walters with 9 percent of the community share along with his full separate share.

already discussed.  Ms. Walters' preference for an alternative division does not, without more, undermine the legitimacy of the one the court ordered.

Ms. Walters' argument that an augmented share of the pension would better protect her privacy than spousal maintenance also is without merit.  As the trial court indicated in its denial of reconsideration, Ms. Walters may already take measures to protect her privacy.  She may receive spousal maintenance payments via direct deposit or at a post office box.

Ms. Walters further argues the trial court should have characterized the entirety of the WSP pension as community property, as the pension funds commingled over the course of the Walters' marriage, and as Mr. Walters' highest-earning years—from which pension payments are calculated—occurred during the marriage.  Ms. Walters' contentions are without merit, however, because Washington courts have adopted the time-rule method for dividing separate portions of a pension from community portions. *Rockwell*, 141 Wn. App. at 251, 254 ("If the pension was accumulated partly prior to marriage and partly after marriage, it is proportionately classified, with the portion acquired during marriage characterized as community property.").

In sum, the trial court's assignment of separate property and equal division of community property were manifestly reasonable.

B.      SPOUSAL MAINTENANCE

Mr. Walters also argues the trial court's spousal maintenance order impermissibly invaded his separate assets, lacked sufficient evidentiary basis, improperly sought to equalize the parties' incomes, and, impropriety notwithstanding, failed to equalize those incomes.

*Standard of review*

We review a trial court's spousal maintenance order for abuse of discretion. *In re Marriage of Condie*, 15 Wn. App. 2d 449, 459, 475 P.3d 993 (2020). Our preceding discussion defines the scope of this review.

*Breadth of discretion*

Under RCW 26.09.090(1), a trial court may order spousal maintenance "in such amounts and for such periods of time as the court deems just . . . after considering all relevant factors." Factors the court must consider include: (a) the receiving party's financial circumstances, (b) the time necessary for the receiving party to retrain and seek appropriate employment, (c) the standard of living established during the marriage, (d) the duration of the marriage, (e) the age, health, and financial obligations of the party receiving maintenance, and (f) the financial circumstances of the paying party. RCW 26.09.090(1)(a)-(f).

22

A trial court may award maintenance is any amount or for any duration provided the award is just. *In re Marriage of Valente*, 179 Wn. App. 817, 821, 320 P.3d 115 (2014). While permanent maintenance awards are disfavored, "a lifetime maintenance award in a reasonable amount is proper 'when it is clear the party seeking maintenance will not be able to contribute significantly to . . . her own livelihood.'" *Id.* at 822 (alteration in original) (quoting *In re Marriage of Mathews*, 70 Wn. App. 116, 124, 853 P.2d 462 (1993)).

Within this framework, the trial court was empowered to award Ms. Walters spousal maintenance in any amount or for any duration, provided the award was just and provided the court considered all relevant factors under RCW 26.09.090(1). The court moreover was empowered to award lifetime maintenance if Ms. Walters was "'not . . . able to contribute significantly to . . . her own livelihood.'" *Id.* (second alteration in original) (quoting *Mathews*, 70 Wn. App. at 124). Finally, the court's factual findings required support from the record, its conclusions needed to rest on sound law, and its decisions could not be manifestly unreasonable. *Bowen*, 168 Wn. App. at 586-87.

### i. Consideration of relevant factors

The court below considered every factor required under RCW 26.09.090(1). The court considered factors (a) and (f) when it determined Mr. Walters' monthly income

23

postdissolution would be roughly double that of Ms. Walters. The court considered factor (b) when it concluded Ms. Walters was retired and would not be seeking future employment. The court considered factor (c) when it determined "both parties had a comfortable standard of living during the marriage." RP at 229. The court considered factor (d) when it acknowledged that the 29-year duration of the Walters' marriage influenced its spousal maintenance award. Finally, the court considered factor (e) when it concluded Ms. Walters' MS diagnosis prevented her from supplementing her retirement income.

### ii. *Justness of award*

After considering the RCW 26.09.090(1) factors, the trial court awarded Ms. Walters lifetime maintenance of $1,250 per month. This award was just because the court used it to equalize the Walters' incomes postdissolution. While case law does not require a trial court to equalize spouses' incomes in this way, nothing prevents it from doing so. *See Doneen*, 197 Wn. App. at 950-51. Even the unpublished case Mr. Walters cites states expressly that "it is permissible for the trial court to try to place the parties to a long-term marriage on equal footing moving forward." *In re Marriage of McMaster*, No. 37176-0-III, slip op. at 11 (Wash. Ct. App. Mar. 8, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/371760_unp.pdf.

24

### iii.  Lifetime maintenance

The trial court's award of lifetime maintenance comported with *Valente* because Ms. Walters' age and health prevented her from "'contribut[ing] significantly to . . . her own livelihood.'"  179 Wn. App. at 822 (alteration in original) (quoting *Mathews*, 70 Wn. App. at 124).  While lifetime maintenance is disfavored, the court was empowered to make such an award in this circumstance.  *Id.*

### iv.  Factual record

The trial court's maintenance order rested on findings derived from the factual record.  *Bowen*, 168 Wn. App. at 587.  We discern no error besides a mathematical one the court may easily correct.

Mr. Walters argues the trial court erred when it concluded without evidence that Ms. Walters was unable to work.  However, the record supported the court's conclusion in this regard.  First, Ms. Walters offered uncontradicted testimony that she had suffered from MS for 14 years.  Ms. Walters also testified that her primary duties throughout the marriage were as a homemaker—rather than as a breadwinner—suggesting diminished professional prospects.  Finally, the court properly inferred from testimony that Ms. Walters was of retirement age, leaving her ill-suited for long-term employment.

The court heard other evidence suggesting Ms. Walters could work. Mr. Walters testified that his wife was physically capable, despite her diagnosis. He also testified that Ms. Walters had accepted part-time employment in the recent past and had celebrated her recovery from MS. Ms. Walters admitted to being healthy enough to kayak and take vacations.

Given the breadth of evidence before it, the trial court could have properly concluded Ms. Walters could work or could not. It concluded she could not.

Mr. Walters similarly argues the trial court erred by concluding without evidence that he was able to work. Specifically, Mr. Walters contends the court had no evidentiary basis for its finding that he could use his defunct LLC to supplement his income. Without disputing the LLC's defunct status, however, the court merely inferred from the LLC's existence that Mr. Walters possessed a marketable skill—namely, conducting active shooter trainings. This was a fair conclusion to draw from Mr. Walters' own testimony, where he admitted earning income from such trainings just two years prior to trial.

Finally, Mr. Walters argues the trial court erred by failing to calculate a maintenance payment that fulfilled its goal of equalizing the Walters' incomes. After reviewing the record, we agree with Mr. Walters that the trial court erroneously concluded a $1,250-per-month maintenance payment would "equalize the economic

condition of the parties post-dissolution." RP at 230.

The error arose when the trial court mistakenly characterized 49.1 percent of the WSP pension as Mr. Walters' separate party, rather than 45.1 percent. As a result, the court determined Mr. Walters' postdissolution monthly income to be $4,944, which it rounded to $5,000. Because this sum exceeded Ms. Walters' income by approximately $2,500, the court ordered a $1,250 equalization payment.

Although the court in its final ruling and denial of reconsideration correctly stated that Mr. Walters' separate share of the pension was 45.1 percent, neither order recalculated the maintenance award to reflect that correction. Had the court done so, it would have determined Mr. Walters' postdissolution income to be $4,764 per month rather than $4,944. Because Ms. Walters' postdissolution income was $2,396, the resulting equalization payment should have been $1,184 rather than $1,250.

Sixty-six dollars is not a tremendous sum within the context of a large marital estate. However, because Mr. Walters must pay this maintenance monthly until he or Ms. Walters dies, the overage as a result of the trial court's error could prove substantial. Mr. Walters is 66 years old. According to Social Security Administration actuarial tables, he may expect to live another 16 years.[6] In that time, he would pay $12,672 more in

---

[6] https://www.ssa.gov/oact/STATS/table4c6.html.

maintenance than the court had intended him to pay.

### v. Sound law

The trial court's maintenance order remained within the requirements of RCW 26.09.090 and all applicable case law. Mr. Walters disagrees, arguing case law forbade the trial court from invading his separate property and Social Security benefits.

While Mr. Walters correctly states that *Zahm* forbids trial courts from reassigning Social Security benefits, case law does not forbid a court from reassigning separate property. As *Farmer* makes clear, "all property is brought before the court for a 'just and equitable' distribution." 172 Wn.2d at 625. While RCW 26.09.080(2) requires courts to consider "the nature and extent of the separate property" as one factor in their distribution analyses, what guides a court's division order is fairness, not the preservation of any separate estate. *Konzen*, 103 Wn.2d at 478.

Mr. Walters cites *Stokes v. Polley* in support of his position, which states that "Washington courts refrain from awarding separate property of one spouse to the other if a just and equitable division is possible without doing so." 145 Wn.2d 341, 347, 37 P.3d 1211 (2001). However, we need not determine in this case whether equity compelled the trial court to reassign Mr. Walters' separate property, as the court made no such reassignment. Nor did the court reassign Mr. Walters' Social Security benefit.

Under the trial court's dissolution order, Mr. Walters retained three sources of income: (1) his 45.1 percent separate share of the WSP pension ($2,088 per month); (2) his 50 percent share of the community portion of the pension ($1,270 per month); and (3) his $1,406 Social Security benefit. The court's maintenance award was $1,250 per month. Accordingly, Mr. Walters' $1,270-per-month share of the community portion of the pension was sufficient to defray the maintenance award without reducing his separate property pension payment or Social Security payment by even one dollar.

Mr. Walters proposes an alternative interpretation whereby the court's $1,250 maintenance award resulted specifically from leveling the parties' Social Security benefits and halving Mr. Walters' separate share of the pension. While this interpretation enables Mr. Walters to assign dual errors—invasion of separate property and invasion of Social Security—it also requires our court to divine which dollars in a pot of money came from which sources, which we are unable to do. A deferential interpretation of the trial court's order—which abuse of discretion review requires—is that the order touched only community property.

### vi. Reasonableness

The trial court's decision to place the Walters on equal footing postdissolution is manifestly reasonable. To conclude otherwise would be to prohibit equal outcomes for

equal partners in a marriage.

### C. REQUEST FOR REASONABLE ATTORNEY FEES ON APPEAL

Ms. Walters requests attorney fees on appeal. RCW 26.09.140 grants trial and appellate courts discretion to award a party their reasonable attorney fees. In exercising our discretion, we consider the merit of the issues on appeal and the parties' respective financial resources. *In re Marriage of C.M.C.*, 87 Wn. App. 84, 89, 940 P.2d 669 (1997), *aff'd*, 136 Wn.2d 800, 966 P.2d 1247 (1998)). We decline Ms. Walters' request, largely because the trial court's property and maintenance awards placed the parties on equal financial footing.

Affirmed, but remanded for correction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                        Cooney, J.

30